457 A.2d 853

**Alexander B. GIACOBETTI, Esquire, as Substituted Trustee of the Manusov Family Trust and Successor to Harry Kracoff, Doris Kracoff, Sara Stark and Nathan Petrushansky, Trustees of the Manusov Family Trust, Appellant,**

v.

**INSURANCE PLACEMENT FACILITY OF PENNSYLVANIA.**

Supreme Court of Pennsylvania.

Argued Oct. 26, 1982.

Decided March 11, 1983.

Reargument Denied May 18, 1983.

448

M. Stuart Goldin, Philadelphia, for appellant.

David R. Strawbridge, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal from an order of the Superior Court, 287 Pa. 590, 428 A.2d 252, affirming a judgment of the Court of

Common Pleas of Philadelphia against the former co-trustees of the Manusov Family Trust and in favor of appellee Insurance Placement Facility of Philadelphia. Appellee was the insurer of a portion of the corpus of the Trust under a fire insurance policy which was in effect in April of 1975, when the insured property was destroyed by fire. Suit was brought by the former co-trustees when appellee refused to make payment on the policy. The Court of common pleas entered judgment in favor of appellee on the ground that one of the former co-trustees, Harry Kracoff, had deliberately set the fire.

We conclude that the wrongful act of Harry Kracoff does not excuse appellee from its contractual obligation to the Manusov Family Trust, but that the wrongful act does justify appellee's retention of the share of insurance proceeds to which Harry Kracoff and his "children or issue" would have been entitled as beneficiaries of the Trust. Hence we vacate the order of the Superior Court, and remand to the Court of Common Pleas of Philadelphia for the entry of a judgment consistent with this opinion.

I

The portion of the Manusov Trust destroyed by fire was a brick building which had housed a grocery store. In 1954, Louis Manusov conveyed the building along with the land on which it was situated to seven named trustees, including himself, his sister Freda Kracoff, his brother-in-law Charles Kracoff, and four of his nieces and nephews, Harry Kracoff, Doris Kracoff, Sara Stark, and Nathan Petrushansky. Manusov directed that "rent, income and profits" from the premises were to be applied to "taxes, insurance, cost of maintenance and other expenses in connection with the management of said property." Manusov further directed the payment of $200 per month to himself for the rest of his life, $300 per year "[t]o each of the Grantees or their survivors and successors," up to $50 per week to "Grantees, Trustees, or their issue or any member of their respective families" for care and maintenance "in the event of sickness

or need," such educational expenses of children of the trustees as appropriate, and $1,000 as a wedding gift to each trustee's child who should marry. Under the terms of the Deed of Trust, the Trust is to terminate upon the death of the last survivor of the designated trustees, at which time title is to "vest absolutely in fee simple to the children or issue of said designated Trustees, share and share alike, per capita, and not per stirpes."

At the time of execution of the Deed of Trust, Manusov's brother-in-law Charles Kracoff was operating the grocery store pursuant to a lease agreement with Manusov. The Deed of Trust specifically continued the lease agreement and granted Charles Kracoff the right to "renew said Lease upon the same terms and conditions, except as hereinafter modified as to the amount of rent, for as many years as he may desire." The trust instrument authorized the assignment of the lease to Charles Kracoff's son Harry Kracoff, Solomon Stark, and Nathan Petrushansky, individually or jointly, who were specified as eligible to lease the premises on the same terms as were available to Charles Kracoff.

By 1974, Louis Manusov, Freda Kracoff, and Charles Kracoff had died, and Harry Kracoff had assumed the responsibilities relating to the operation of the grocery store. Part of the contents of the grocery store, including equipment and improvements, had belonged to Harry Kracoff's father, Charles Kracoff, the previous lessee. Title to these contents was held by the trustees of a trust established under the will of Charles Kracoff. The trustees were Harry Kracoff, Dora Kracoff, Sara Stark, and Nathan Petrushansky, the four remaining co-trustees of the Manusov Family Trust. The remainder of the contents of the grocery store, including inventories, were owned by Harry Kracoff.

In June of 1974, Harry Kracoff procured the fire insurance policy at issue here. The policy covered the building which housed the grocery store in an amount of $50,000. The policy also covered "Contents of Food Market in Brick Building" in an amount of $100,000. Entered in a section of

the form policy under the heading "Named Insured Mailing Address" is the following:

EST/CHARLES KRACOFF
2201 RIDGE AVE
PHILADELPHIA PA 19121

Immediately below this entry is an additional entry, "MANUSOV FAMILY TRUST & HARRY KRACOFF, TRUSTEE." The policy, effective from June 20, 1974, to June 20, 1975, was a "Standard Fire Insurance Policy," whose terms and conditions are fixed by statute. See Act of May 17, 1921, P.L. 682, § 506(2) (added by Act of August 23, 1961, P.L. 1081, § 1), 40 P.S. § 636(2) (1971). On March 25, 1975, appellee issued a "Non-Premium Endorsement" which stated that the insured's name had been changed from "Estate of Charles Kracoff, Manusov Family Trust, Harry Kracoff, trustee," to "Manusov Family Trust, Harry Kracoff, Trustee, and Harry Kracoff, A.T.I.M.A."[1]

The building and contents were destroyed by fire in April of 1975. Harry Kracoff submitted timely, sworn proofs of loss which indicated that the fire caused losses in excess of the amount of insurance on both the building and its contents. Kracoff stated in the proofs that the origin of the fire was "unknown to insured." After determining that

---

1. The endorsement also added a mortgagee to the policy as a payee, pursuant to a "Lender's Loss Payable Clause." The Clause contained a provision which provided that the mortgagee's interest "shall not be impaired or invalidated by any act or neglect of the borrower, mortgagor or owner of the within described property . . . ." Pursuant to this clause, appellee paid the mortgagee the sum of $64,374.25 shortly after the commencement of the present litigation. See generally *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970).

Neither the endorsement nor the remainder of the record specifies which of the insured properties was mortgaged. However, settlor Louis Manusov's Deed of Trust specifically provides that "during the pendency of said Trust, my said Trustees shall have no right to sell or mortgage the said premises," and that "each and every beneficiary under this Trust is hereby restrained from and shall be without right, power and authority, to sell, transfer, pledge, mortgage, alienate, or in any other manner to affect his beneficial and legal title . . . ." It is not claimed that the amount of coverage on the building has been dissipated by the payment to the mortgagee.

Harry Kracoff had started the fire, appellee refused to pay either claim.

The present proceedings commenced on January 6, 1976, when plaintiffs Harry Kracoff, Doris Kracoff, Sara Stark, and Nathan Petrushansky filed a complaint against appellee. The complaint included two counts, the first of which contained a request for a judgment of $50,000, the amount of coverage on the building. This request was made by the four plaintiffs in their capacity as "Trustees of [the] Manusov Family Trust." The second count contained a request for a judgment of $100,000, the amount of coverage on the contents of the building. This request was made by the four plaintiffs in their capacity as "Trustees Under the Will of Charles Kracoff," and by Harry Kracoff "in his own right." Appellee filed an answer and new matter, the latter of which averred that in the sworn proofs of loss Harry Kracoff had deliberately concealed the true origin of the fire with intent to defraud appellee, in violation of the "Concealment, Fraud" provision of the insurance policy.[2] Appellee further averred that it was not liable for the losses under the "Perils Not Included" clause,[3] and added that plaintiffs had, "in fact, intentionally and deliberately caused or contributed to the cause of such fire and any consequent loss."[4]

On October 3, 1978, shortly before trial, Harry Kracoff resigned as a trustee of the Manusov Family Trust, "effec-

**2.** That provision states: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

**3.** That clause provides: "This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by . . . neglect of the insured to use all reasonable means to save and preserve the property at and after a loss . . . ."

**4.** The complaint contained a third count, joined in by "all plaintiffs," which alleged that appellee had refused to make a good faith offer of settlement, and which sought punitive damages. In new matter, appellee averred that the claim contained in the count "fails to state a claim or cause of action upon which claim can be made as a matter of law." The count was withdrawn before trial.

tive immediately." That same day he executed a "Release and Disclaimer," which stated that he renounced and disclaimed "all right, title and interest of any kind which I ever had, now have or may have in the future in said Trust as a beneficiary thereof." Nathan Petrushansky, one of the other co-trustees, died on October 13, 1978, also before trial. As a result of Harry Kracoff's resignation and Nathan Petrushansky's death, Doris Kracoff and Sara Stark were the remaining co-trustees of the Manusov Family Trust.

After a four-day, non-jury trial, held in October of 1978, the court of common pleas found for appellee on both counts. In its opinion, the court concluded from the evidence presented by appellee that the fire had been a "set-up" arranged by an "insider," rather than by "an angry outside person," as Harry Kracoff had maintained. Having determined that there were "only two suspects," Harry Kracoff and his son-in-law Leon Bryn, both of whom had been present at the store throughout the day of the fire, the court concluded that the fire had been started solely by Harry Kracoff.

In denying recovery for loss to the building, the court imputed the wrongful conduct of Harry Kracoff to the plaintiffs in their capacity as trustees under the Manusov Family Trust on the ground that Harry Kracoff "was the agent of all other parties having a present interest in the premises or its contents." This determination was predicated on the fact that Harry Kracoff had had exclusive control of the business operation for some time prior to the fire, a control in which the other co-trustees had acquiesced. Having concluded that the remaining co-trustees were bound by Harry Kracoff's conduct, the court went on to state that "we do not see how any future beneficiaries of the trust have independent standing." [5]

Plaintiffs filed timely exceptions to the adjudication in their capacity as co-trustees under the Manusov Family

---

**5.** The court also rejected plaintiffs' claim as trustees under the will of Charles Kracoff, in which plaintiffs had sought to recover for loss to the contents of the store. That claim was abandoned on exceptions to the court's adjudication, and was not pursued on appeal.

Trust. The exceptions did not dispute the court's finding that the fire had been started by Harry Kracoff, but did dispute the court's determination that all interests were bound by Harry Kracoff's wrongful act, including the interests of "minors and unborn remaindermen." In an opinion dated February 2, 1979, dismissing the exceptions, the court concluded that the remaindermen were "innocent," but perceived the remaindermen as "natural objects of [the] bounty of Harry Kracoff and his co-trustees" whose right to recover was dependent upon the right to recover of Harry Kracoff and the co-trustees.

After the dismissal of exceptions, remaining trustees Doris Kracoff and Sara Stark resigned as trustees. By decree dated March 2, 1979, the Orphans' Court Division of the Court of Common Pleas of Philadelphia granted a petition for the appointment of a substituted trustee to prosecute an appeal.[6] The substituted trustee, appellant Alexander B. Giacobetti, Esquire, took an appeal to the Superior Court, a panel of which entered a per curiam order affirming the judgment. This Court granted appellant's petition for allowance of appeal.

II

■ We agree with the court of common pleas that the wrongful conduct of Harry Kracoff not only prevents him from sharing in the proceeds of the fire insurance policy but also bars the enjoyment of the proceeds by his "children or issue," the beneficiaries under the Manusov Family Trust who are the natural objects of Harry Kracoff's bounty. Appellee's right to retain the shares of Harry Kracoff and his "children or issue" is in no respect dependent upon the "Release and Disclaimer" executed by Harry Kracoff on October 3, 1978, the day on which he resigned as trustee. Rather, appellee's right to retain these shares gives full

6. The petition was filed by John D. Lucey, Jr., Esquire, who had been appointed as guardian and trustee ad litem to represent minor and unascertained interests in proceedings initiated by the former co-trustees to terminate the Manusov Family Trust. The record makes no mention of the status of the proceedings to terminate the Trust.

effect to "the common law principle that a person will not be permitted to profit by his own wrong, particularly his own crime." *Greifer Estate,* 333 Pa. 278, 279, 5 A.2d 118, 119 (1939).

■ We do not agree, however, with the conclusion of the court of common pleas that the other beneficiaries under the Manusov Family Trust are not entitled to recover their share of the insurance proceeds. The policy issued by appellee provided insurance on properties owned by the "Manusov Family Trust, Harry Kracoff, Trustee, and Harry Kracoff, A.T.I.M.A.," the latter a shorthand for "as their interests may appear." See *New Hampshire Insurance Co. v. American Employers Insurance Co.,* 208 Kan. 532, 533, 492 P.2d 1322, 1324 (1972). It is clear from the findings of the court of common pleas that Harry Kracoff acted alone in setting the fire, without any assistance from the other co-trustees, who were also income beneficiaries under the terms of the Trust, or from any "children or issue" of the designated co-trustees. Absent evidence that the other beneficiaries assisted in or approved of Harry Kracoff's wrongful conduct, there is no basis for prohibiting recovery by the other beneficiaries.

■ Contrary to the determination of the court of common pleas, the wrongful conduct of Harry Kracoff may not fairly be imputed to the entire Trust, as nothing in the trust instrument even remotely contemplated that any portion of the corpus might be deliberately destroyed by fire. Nor may Harry Kracoff's wrongful conduct fairly be imputed to the other beneficiaries on the theory that they acquiesced in his assumption of control over the family's business affairs. "A trustee as such is not an agent of the beneficiary . . . ." Restatement (Second) of Trusts § 276 Comment a (1959). Although over the years of the administration of the Trust the other trustee-beneficiaries permitted Harry Kracoff to assume progressively more responsibilities under the Deed of Trust, including the responsibility to procure insurance on the trust property, appellee has failed to establish that Harry Kracoff became the agent of any of the other beneficiaries for all purposes.

Although appellee has not pressed its contention, raised in new matter, that it is not liable to the Trust under the "Concealment, Fraud" and the "Perils Not Included" clauses of the standardized policy, we conclude that, in any event, neither clause permits appellee to deny insurance proceeds to the Trust. The conduct of Harry Kracoff was wholly unilateral and in no way may be deemed to be an act of the Trust itself.

The rights and obligations of the parties under the policy of fire insurance having been established, the sole remaining task is to fashion an appropriate judgment. It is obvious that the entry of a final judgment must be postponed until the shares of insurance proceeds to which Harry Kracoff and his "children or issue" would have been entitled are known. If the proceedings to terminate the Trust are still pending, appellee should be permitted to appear and to protect its interests; if those proceedings have been terminated and a final decree entered, the decree of the orphans' court may be opened to the extent necessary to assist the court of common pleas in entering a fair adjudication in this case.

The order of the Superior Court and the judgment of the Court of Common Pleas of Philadelphia are vacated. The record is remanded to the court of common pleas for proceedings consistent with this opinion.

O'BRIEN, Former C.J., did not participate in the decision of this case.