Emil **KELLNER** and Natalie
**Kellner, Plaintiffs,**

v.

The **AETNA CASUALTY AND SURETY COMPANY, Defendants.**

Emil **KELLNER** and Natalie
**Kellner, Plaintiffs,**

v.

**ROYAL–INDEMNITY COMPANY,
Third-Party Plaintiff,**

v.

**WHAMB LEASING INC. t/a Montgomery Sportswear, Inc. and Miss Cassie Fashions; Heim, George F., Jr.; United States Casualty Corp.; and Aetna Casualty & Surety Co., Third-Party.**

Civ. Nos. 80–0794, 81–0299.

United States District Court,
M.D. Pennsylvania,
Civil Division.

Aug. 29, 1984.

position of the Pennsylvania courts." See, *Mele v. All-Star Insurance Corp.*, 453 F.Supp. 1338, 1342 (E.D.Pa.1978).

Martin J. Meyer, Kingston, Pa., for plaintiffs.

Clifford A. Rieders, Murphy, Mussina, Harris & Rieders, Williamsport, Pa., for third party defendants Whamb Leasing, Inc. T/A Montgomery Sportswear, Inc., Miss Cassie Fashions and George F. Heim, Jr.

Cozen, Begier & O'Connor, David R. Strawbridge, Philadelphia, Pa., for Royal Indem. Co.

Jeffrey B. Rettig, Harrisburg, Pa., for Aetna Cas. & Sur. Co.

Timothy E. Foley, Bour, Gallager, & Foley, Scranton, Pa., for Royal Indem. Co. (defendant).

Miller, Kistler & Campbell, Inc., Richard L. Campbell, State College, Pa., for U.S. Cas. Corp.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

These actions, filed against Aetna Casualty & Surety Company ("Aetna") and Royal Indemnity Company ("Royal") on July 28, 1980 and March 4, 1981 respectively, seek recovery of insurance proceeds allegedly due under co-extensive policies.[1] On July 6, 1981 the cases were joined for administrative purposes. This Court, in reliance on Pennsylvania case law as it existed at the time, granted summary judgment to Royal against the Kellners on May 14, 1982. 605 F.Supp. 322. In the wake of that decision, Aetna, now the only party to whom the Kellners could look for indemnification, appealed to the United States Court of Appeals for the Third Circuit. The Court of Appeals, with benefit of a case determined by the Pennsylvania Supreme Court subsequent to this Court's

---

1. The facts which underlie these actions are set out at length in the memorandum and order issued by this Court on May 14, 1982. We incorporate by reference pages two (2) through four (4) of that document.

decision in *Kellner v. Royal*, ordered the case remanded and consolidated with *Kellner v. Aetna*. The Court of Appeals further ordered that these cases be re-examined in light of potentially new precedent established by *Giacobetti v. Insurance Placement Facility of Pa.*, 500 Pa. 447, 457 A.2d 853 (1983). We now consider cross-motions for summary judgment by the various parties. For the reasons set forth below, Plaintiff Kellners will prevail against Defendants Royal and Aetna. Also, Royal's motion to dismiss a cross-claim for indemnification brought against it by Third-Party Defendant Whamb Leasing, Inc. is granted.

It is, of course, well settled that for a moving party to prevail on a motion for summary judgment, he must show (a) that there is no genuine issue as to any material fact, and (b) that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); See WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL SECTION 2712. Thus, the Court cannot try issues of fact on a Rule 56 motion, but only is empowered to determine whether there are issues to be tried. *Janek v. Celebreeze*, 336 F.2d 828 (3rd Cir.1964). Finally, in determining whether an issue of material fact does exist, all inferences must be drawn against the moving party. See 6 MOORE'S FEDERAL PRACTICE ¶ 56.-04[2].

## I. KELLNER VS. ROYAL

Prior to *Giacobetti*, it was clearly the law in Pennsylvania that the fraudulent or intentionally destructive act of an insured would bar recovery by any co-insured even if said co-insured was totally innocent of complicity in the matter. Indeed, this had been the law in Pennsylvania since *Bowers Co. v. London Assurance Corp.*, 90 Pa.Super. 121 (1926). This case of ancient lineage was controlling for some six decades.

The subject of insurance in *Bowers* was an automobile under a bailment lease the terms of which required the purchaser/lessee to maintain insurance during the life of the lease against loss or damage by fire.

The automobile was destroyed by fire, a fire subsequently determined to have been caused by the purchaser. When the insurance company refused payment to the seller he successfully brought suit. However, the Superior Court, perhaps sensitive to the possibility of collusion between co-insureds in such a situation, reversed and established the principle of barring recovery to all insureds when any co-insured was culpable. This principle survived until *Giacobetti* and doubtless deprived many innocent insureds of benefits which they had every reason to expect to recover. Not yet armed with *Giacobetti*, this Court had no recourse but to rule for Royal the first time it was confronted by this matter.

As we have already intimated, *Giacobetti* has changed insurance law in Pennsylvania. The subject of insurance in *Giacobetti* was a building which was a portion of the corpus of a trust settled by a Louis Manusov in 1954 to function as a continuous source of income to himself and several members of his family. In 1974 after the death of Louis Manusov, his nephew, Harry Kracoff, assumed control of the trust property with consent of the other beneficiaries due to his superior knowledge of the grocery business conducted thereon. Harry Kracoff procured the fire insurance policy which came to be the focus of *Giacobetti*. The insurance policy named Harry Kracoff and the other income beneficiaries of the Manusov Trust as co-insureds. The building and inventory therein were destroyed by fire in April of 1975. The Philadelphia Court of Common Pleas determined in October of 1978 that Harry Kracoff had arranged the arson of the building and denied recovery as to him and, in accord with *Bowers*, the other beneficiaries under the policy as well. After affirmance by the Superior Court, the Supreme Court of Pennsylvania agreed to hear an appeal.

The Supreme Court reversed and, while still denying recovery to Harry Kracoff and his heirs, ordered the insurance company to make pro rata payments to the innocent insureds. The Supreme Court stated in pertinent part:

"Absent evidence that the other beneficiaries assisted in or approved of Harry Kracoff's wrongful conduct, there is no basis for prohibiting recovery by the other beneficiaries."

▮ The implications of this statement by the Pennsylvania Supreme Court for Royal's cause are negative and obvious. Just as Harry Kracoff's co-insureds were innocent and, hence, allowed to recover, so, too, are George F. Heim, Jr.'s co-insureds innocent. How, then, should the Kellners be denied the insurance proceeds at issue in this case?

In its brief Royal cites several aspects of its relationship to the Kellners which, Royal urges, differentiate this situation from that in *Giacobetti*. Royal first makes much of the fact that the interests of the various Manusov beneficiaries in the trust property in *Giacobetti* were several while the interests of Heim (equitable title) and the Kellners (legal title) were joint. We see no magic in this distinction. Nowhere in the *Giacobetti* decision did the Supreme Court even infer that it was allowing the innocent co-insureds to recover on the policy for the reason that their interest was several and, hence, easily severable from that of the culpable party. Rather, the Supreme Court seemed intent on preventing the culpable party from profiting by his own wrong while avoiding the punishment of innocent parties. To reiterate, there is no indication that the Supreme Court considered the joint/several dichotomy crucial or even a factor in its decision. This Court, likewise, is unimpressed by its import. Even if the interests of Heim and the Kellners were joint in the technical sense, in reality their interests were disparate, perhaps even adverse. The relationship between the Kellners and Heim was an arms-length buyer/seller scenario with the Kellners reserving the right to repossess the property should Heim default in the schedule of payments. To characterize their relationship as joint is legally correct but factually misleading. The public policy that is given effect by the rule in *Bowers* is the prevention of unjust enrichment of a fraudulent insured due to indemnification of a co-insured whose interests are closely related. This is decidedly not the type of relationship which exists between the Kellners and George Heim.

Another argument relied upon by Royal is that the conspicuous absence of reference to *Bowers* or its progeny in the *Giacobetti* opinion indicates that the Supreme Court did not intend to overrule *Bowers* and that *Giacobetti* is to be narrowly construed on its precise facts. We draw another inference and conclude that if the Supreme Court did not intend broad application of the principle espoused in *Giacobetti* it would have made an unequivocal statement to that effect.

Finally, on page seven (7) of the brief submitted to this Court by Royal on November 4, 1983, this statement concerning *Giacobetti* is made: "The only principle upon which the Court relied was that a trustee is not considered an agent of the beneficiary." Apart from the fact that the use of the word "only" makes this statement inaccurate, we fail to see its significance. Would Royal have this Court decide that because the Kellner/Heim contract allocated the task of procuring insurance to Heim that he had become the Kellners' agent? The logical next step would be to find that under the principle of *respondeat superior* the Kellners would be vicariously liable for Heim's acts and, thus, precluded from recovering on the policy issued by Royal. However, a close examination of the facts of *Giacobetti* reveals that Harry Kracoff, the culpable party therein, had been entrusted with far more responsibility by his co-trustees than the mere procurement of insurance. Yet, in the words of the Supreme Court, "... appellee has failed to establish that Harry Kracoff became the agent of any of the other beneficiaries *for all purposes*" (emphasis ours). *Giacobetti, supra,* 457 A.2d at 857. From this it becomes evident that the Pennsylvania Supreme Court is reluctant to deny recovery to innocent co-insureds on this "agency through acquiescence" theory. This Court shares that reluctance. More-

over, we note that the relationship between the Kellners and Heim was far more tenuous than that between Harry Kracoff and his co-beneficiaries. It would, therefore, be even less just to characterize George Heim as the agent of the Kellners.

In conclusion, we find none of Royal's arguments compelling enough to alter our conviction that *Giacobetti* has profoundly changed the decisional law which must govern this matter. Accordingly, we grant summary judgment to Plaintiff Kellners as to Royal. This grant does not, of course, affect Royal's right to seek contribution or indemnification from Aetna.

## II. ROYAL VS. WHAMB LEASING, INC.

On June 12, 1981, Third-Party Plaintiff Royal filed a complaint alleging a right of indemnification against Whamb Leasing, Inc. (Whamb) for any sum it might be found to owe the Kellners. Whamb crossclaimed on the policy procured by George Heim which named it as an additional insured. Royal then moved for summary judgment asserting a defense of *res judicata* on grounds that the Court of Common Pleas of Lycoming County had already reached a decision on the merits in this matter, a decision which included the finding that Heim had procured said arson on behalf of Whamb. This, of course, precluded Whamb's recovery on the aforementioned policy.

■ For the defense of *res judicata* to succeed four elements must be present: "(1) Identity in the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued". *Stevenson v. Silverman*, 417 Pa. 187, 190–91, 208 A.2d 786 (1965). Because each of these elements is present in the instant case, Royal's position seems to be firmly grounded.

Whamb argues, however, that for a decision to be binding for *res judicata* purposes it must be *final* (emphasis ours).[2] Whamb cites *Bailey v. Christian*, 733 F.2d 279 (3rd Cir.1984), for the proposition that a judgment is not final in any case where appeals have not been exhausted. This Court, however, does not read that case as an interpretation by the Court of Appeals that the law of Pennsylvania does not regard a decision on the merits by a Court of Common Pleas as "final". Rather, a close reading of that case reveals that the linchpin of the decision was the Court of Appeal's fear that the statute of limitations might extinguish a civil rights claim of the plaintiff and, so, ordered a stay in the federal proceedings.

■ The decision in *Bailey*, then, does not herald a revision of Pennsylvania law on the finality of judgments. That law, in the opinion of this Court remains consistent with this statement from *Helmig v. Rockwell Manufacturing Co.*, 389 Pa. 21, 131 A.2d 622 (1957):

> "Broadly stated, the rule of *res judicata* is that when a court of competent jurisdiction has determined a litigated case on the merits, the judgment entered, *until reversed*, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies ..." (emphasis ours).

This statement on when a judgment is final for purposes of *res judicata* has since been highlighted in *Bearoff v. Bearoff Bros., Inc.*, 458 Pa. 494, 498, 327 A.2d 72 (1974). This Court can only conclude that the judgment on the merits of any Pennsylvania Court of Common Pleas is final for purposes of *res judicata* until reversed.

Due to the foregoing analysis we find that Whamb's cross-claim against Royal must fail under the principle of *res judicata*. Therefore, Royal's motion for summary judgment as to Whamb is granted.

**2.** The prospect of reversal in this case looks exceedingly dim since the Superior Court affirmed the judgment of the Lycoming County Court of Common Pleas which is the root of this dispute on August 10, 1984.

## III. KELLNER VS. AETNA

■ On August 10, 1982 this Court granted Plaintiff Kellners' motion for summary judgment against Defendant Aetna. It was undisputed that the Kellners had an insurable interest, had paid premiums to protect that interest and had submitted proper proof of loss. Aetna, therefore, was liable as a matter of law. The holding in *Giacobetti* has done nothing to diminish that liability. We hold today that summary judgment is granted the Kellners against Aetna. Mirroring part I of this decision, we note that Aetna is in no way hampered from seeking contribution or indemnification from Royal.

## IV. DAMAGES

■ In a stipulation of counsel entered into on December 14, 1982 Royal and Aetna agreed that the Kellners were entitled to damages of $52,898.00. It was further stipulated that post-judgment interest would commence to run as of December 1, 1982 on said sum. This Court considers that stipulation to be binding and, as indicated in parts I and III of this decision, Royal and Aetna are jointly and severally liable to the Kellners in this amount. Plaintiff Kellners are now free to proceed against either Defendant for judgment in the amount stipulated.

## ORDER

AND NOW, August 29, 1984, in view of the foregoing, IT IS ORDERED AS FOLLOWS:

1. Judgment in the amount of $52,898.00 with interest from December 1, 1982 is hereby entered in favor of Emil Kellner and Natalie Kellner against the Aetna Casualty and Surety Company and the Royal Indemnity Company.

2. In the cross-claim of Whamb Leasing, Inc. t/a Montgomery Sportswear, Inc. and Miss Cassie Fashions, against the Royal Indemnity Company, judgment is hereby entered in favor of the Royal Indemnity Company.