Emil KELLNER and Natalie Kellner, Plaintiffs,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendants.

Emil KELLNER and Natalie Kellner, Plaintiffs,

v.

ROYAL INDEMNITY COMPANY, Third-Party Plaintiff,

v.

WHAMB LEASING INC. t/a Montgomery Sportswear, Inc. and Miss Cassie Fashions; Heim, George F., Jr.; United States Casualty Corp.; and Aetna Casualty & Surety Co., Third-Party Defendants.

Civ. Nos. 80–0794, 81–0299.

United States District Court, M.D. Pennsylvania, Civil Division.

Nov. 14, 1984.

**332**

Martin J. Meyer, Kingston, Pa., for plaintiffs.

Clifford A. Rieders, Murphy, Mussina, Harris & Rieders, Williamsport, Pa., for third party defendants Whamb Leasing, Inc. t/a Montgomery Sportswear, Inc., Miss Cassie Fashions, George F. Heim, Jr.

Timothy E. Foley, Bour, Gallager, & Foley, Scranton, Pa., Cozen, Begier & O'Connor, David R. Strawbridge, Philadelphia, Pa., for Royal Indemnity.

Jeffrey B. Rettig, Harrisburg, Pa., for Aetna Casualty & Surety Co.

Miller, Kistler & Campbell, Inc., Richard L. Campbell, State College, Pa., for United States Casualty Corp.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here motions for reconsideration of this Court's order of August 29, 1984, 605 F.Supp. 326, by Royal Indemnity Company (Royal) and Aetna Casualty and Surety Company (Aetna). Only Royal has filed a support brief. Royal and Aetna Casualty and Surety Company (Aetna) were made jointly and severally liable to the Plaintiffs in the amount of $52,898.00. Royal asserts that the Court has not addressed several affirmative defenses which should change the outcome of this case. Royal also asserts that since it was Royal who moved for summary judgment against the Plaintiffs, who never made a cross-motion for summary judgment in this matter, our grant of summary judgment to the Plaintiffs vis-a-vis Royal was inappropriate.

We address first Royal's contention that our grant of summary judgment to the Plaintiffs was inappropriate. Actually, the grant of summary judgment to a non-moving party is a relatively frequent occurrence in federal courts. Witness the statement:

> ... the weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56.

Wright & Miller, Federal Practice and Procedure: Civil § 2720, pages 467–68.

■ This is in keeping with the objective of Rule 56 of the Federal Rules of Civil Procedure to expedite the disposition of

cases and, somewhat more remotely, with the mandate of Rule 54(c) requiring the court to grant the relief to which a party is entitled "even if the party has not demanded such relief in his pleadings." *Teamsters Local Union No. 205 v. Carl Colteryahn Dairy, Inc.,* 436 F.Supp. 341 (W.D. Pa.1977). Thus, our grant of summary judgment to the Plaintiffs vis-a-vis Royal was procedurally proper. Moreover, since there is no material fact in dispute between Plaintiffs and Royal, summary judgment for Plaintiffs in this matter expedited what this Court considers the just disposition of this case in light of the decision in *Giacobetti v. Insurance Placement Facility of Pennsylvania,* 457 A.2d 853, 500 Pa. 447, 456 (1983).

 Concerning the matter of Royal's unaddressed affirmative defenses, it appears that two of them are no defense at all. The first, that the Kellners had no insurable interest in the premises which is the subject of this claim, is refuted by the facts. It is an elementary principle of insurance law that an insurable interest exists in any party who would be exposed to financial loss by the destruction of a certain property. 4 Appleman, *Insurance Law and Practice,* § 2123 at 40–41. Since Plaintiffs had reserved the right to repossess the property in question if George F. Heim reneged on his payment obligation, it is clear they would be exposed to financial loss should that property be destroyed. It is equally clear that they had an insurable interest in the property.

 The second of Royal's affirmative defenses, that there was no coverage under the binder issued to George F. Heim because he never paid a premium on said binder, is not in conformance with the law. The issuance of a binder evidences a complete, temporary, or preliminary contract of insurance effective from that time until issuance of the formal policy or until rejection of the risk. 12 A Appleman, *Insurance Law and Practice,* § 7227 at 149, *Carideo v. Phoenix Assurance Company,* 317 F.Supp. 607 (E.D.Pa.1970). Moreover, payment of premiums is not a necessary

condition precedent to the validity of a binder. *Carideo,* supra at 611, citing *Rossi v. Firemen's Insurance Company,* 310 Pa. 242, 165 A. 16 (1932). Therefore, since Royal neither issued an actual policy nor rejected the risk in this matter, their defense of insufficient consideration is ineffectual.

 The last surviving affirmative defense of Royal, the contention that its coverage of the Heim/Kellner property was in the nature of excess coverage to be used only after the primary insurer, Aetna, had disbursed the limits of its policy to the Plaintiffs, requires more detailed analysis. It must be noted that Royal never actually issued an insurance policy on the building which burned. Any coverage they provided on that structure stems from the binder discussed previously herein in relation to Royal's lack of consideration defense. Royal would have us determine that, since the binder was to be incorporated into an existing policy which covered the contents of the burned structure and the contents of another building in Montgomery County as well, its coverage was in the nature of "blanket" insurance and therefore excess to the more specific policy provided on the same site by Aetna. Royal then cites Pennsylvania cases which arguably hold that when two policies cover the same loss and one specifically covers the damaged property only while the other covers a variety of risks including the damaged property, the former policy is primary and the latter excess.

This Court cannot reach that conclusion in this case for several reasons. First, we are not willing to make the assumption that the binder actually issued by Royal would have ultimately become part of a "blanket" policy. Even if we were to make such an assumption, the fact remains that the binder issued by Royal is the document that controlled the extent of its liability in this situation. As noted earlier, binders are effective until supplanted by a formal policy or the company gives notice that it has rejected the risk. Since neither of these events occurred, we are·unwilling to dis-

cuss the nuances of a "policy" which never existed.

Thus, Royal's binder to Heim/Wham must be compared to Aetna's policy with the Kellners. These two documents are equally specific in that they refer only to the structure at 148–50 Main Street, Jersey Shore, Pennsylvania. It is primarily for this reason that we cannot say, as a matter of law, that the Aetna policy was primary and Royal's excess or vice versa.

There are also factual distinctions between the instant case and those cited by Royal. First, in this case it is not the same party who secured both coverages. There were two distinct insurable interests in the property, the legal interest of the Kellners and the equitable interest of Wham/Heim. The cases Royal offers in support of its position [1] all concern situations where one party took out different types of coverage on the same location. We think this an important factual distinction. Second, both the policy issued by Aetna and the policy which Royal claims would have been issued in extension of its binder contain "other insurance" clauses which assert the right to be considered as excess coverage. If this type of "boilerplate" is to be given effect what will be the recourse of an insured who takes out two equally specific policies with two separate carriers to cover the same property? If each can be considered excess neither would ever pay. One of the most widely respected commentators on insurance law has declared "... where one has conflicting excess clauses, they are mutually repugnant—in other words, they cannot be excess to each other since they are identical." 8 A Appleman, *Insurance Law and Practice,* § 4909 at 399.

For the foregoing reasons we hold that Royal's various unaddressed affirmative defenses are neither individually nor collectively persuasive enough to warrant chang-

ing our original judgment in this matter. We note that Royal's right to seek proration before the Pennsylvania Insurance Commission of any sum it is forced to pay pursuant to this judgment is unaffected. Consequently, we issue the following.

### ORDER

AND NOW, this 14th day of November, 1984, IT IS HEREBY ORDERED as follows:

1. Royal's motion for reconsideration of judgment in this matter is denied.

2. Aetna's motion for reconsideration in this matter is denied.[1]

3. Royal's motion for summary judgment against Aetna is denied.

---

**1.** *Meigs v. I.N.A.,* 205 Pa. 378, 54 A. 1053 (1903); *Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Insurance Co.,* 385 Pa. 394, 123 A.2d 413 (1956) etc.

**1.** Since Aetna has not filed a memorandum in support of its motion and since the motion itself was untimely with respect to Local Rule 604, it is unnecessary to rationalize our denial of Aetna's motion.