584 A.2d 988

G. Fred IEHLE and Joan Ann R. Iehle and B.F. Knits, Inc.

v.

Ronald G. COLEMAN and General Accident Group and Pennsylvania General Insurance Company and Murphy Insurance Associates.

Appeal of PENNSYLVANIA GENERAL INSURANCE COMPANY.

PENNSYLVANIA GENERAL INSURANCE COMPANY, Appellant,

v.

G. Fred IEHLE and Joan Ann R. Iehle and B.F. Knits, Inc. and Ronald G. Coleman, Appellees.

Superior Court of Pennsylvania.

Argued June 12, 1990.

Filed Jan. 4, 1991.

Thomas M. Regan, Philadelphia, for Pennsylvania General, appellant.

Joseph Roda, Lancaster, for Iehle and B.F. Knits, appellees.

Before WIEAND, DEL SOLE and MONTEMURO, JJ.

WIEAND, Judge:

The issue in this appeal is whether the buyer of a factory building, including sewing equipment, pursuant to a long-term agreement of sale forfeits the right to receive the proceeds of a fire insurance policy by agreeing to pay some or all of such proceeds to the seller who is subsequently convicted of arson in connection with the partial destruction by fire of the factory building and equipment. The trial court determined that there was no such forfeiture and entered summary judgment for the buyers in their action against the insurer. The insurer appealed. We affirm.

On September 30, 1980, G. Fred Iehle and Joan Ann R. Iehle, husband and wife, entered into a long-term agreement to purchase from Ronald G. Coleman a factory building and sewing equipment situated at 502 Edgar Avenue, Bloomsburg, Columbia County. By the terms of the agreement, the Iehles were to pay $115,000 for the factory building, with a down payment of $40,000, and $25,000 for the equipment, with a down payment of $10,000. Upon making these down payments, the buyers took possession of the premises and equipment. The balance of the consideration was payable in installments. On October 1, 1980, Pennsylvania General Insurance Company issued a policy providing fire insurance coverage on the building in the amount of $146,000,[1] and a policy providing coverage for the contents in an amount of $50,000.[2]

On August 3, 1981, the factory building and its contents were damaged by fire. The parties have stipulated that the damages to the building were $112,431.05 and that the contents destroyed by the fire had a value in excess of $50,000. At the time of the fire, the Iehles were slightly in arrears in the installment payments required by their agree-

1. The insureds were named as Iehle Enterprises, Inc., G. Fred Iehle and Joan R. Iehle.

2. The insured named in this policy was B.F. Knits, Inc., a corporation owned by the Iehles.

ment with Coleman. Following the fire, they made no payments. In September, Coleman confessed judgment against the Iehles and B.F. Knits, Inc. for the balance due on account of the building and equipment. In October, 1981, he also filed an equity action in Lancaster County to recover a portion of the insurance proceeds payable to the Iehles and their corporations. These actions were settled by agreement on February 19, 1982. By the terms thereof, the Iehles agreed to pay to Coleman the sum of $102,000 from the insurance proceeds and execute a quitclaim deed reconveying title to the factory building. Coleman, in exchange, agreed to discontinue his action and satisfy the judgments.

Coleman was subsequently charged with arson in connection with the fire. He was convicted following trial on September 23, 1983. Post-trial motions were denied, sentence was imposed, the Superior Court affirmed and the Supreme Court denied allocatur.[3]

Meanwhile, the insurer had filed an action for declaratory judgment by which it sought to have the insurance policies declared null and void because of the Iehles' agreement to pay a portion of the proceeds to Coleman, the arsonist. The insured's agreement, it was argued, had compromised the insurer's subrogation rights and had violated public policy. A petition for declaratory judgment was also filed by the Iehles.[4] These actions were consolidated in the trial court and resulted in the entry of a summary judgment in favor of the Iehles. On June 26, 1989, the court held that the insured was entitled to be paid $162,431.95, plus interest in an amount to be determined. By subsequent order, dated July 21, 1989, the court computed pre-judgment interest to be in the amount of $70,597.40 and entered judgment in

3. A motion to reconsider the denial of allocatur is still pending.

4. A separate action was filed by the Iehles against Coleman in an effort to set aside their earlier agreement to settle Coleman's actions against them. In this action, the trial court denied a motion for summary judgment, and the action has not been determined finally.

favor of the insured and against the insurer in the amount of $233,028.45. The insurer appealed on July 25, 1989.[5]

"A motion for summary judgment may be granted only if the moving party has shown that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Persik v. Nationwide Mutual Ins. Co.*, 382 Pa.Super. 29, 30–31, 554 A.2d 930, 931 (1989), *allocatur denied*, 522 Pa. 613, 563 A.2d 499 (1989), citing *French v. United Parcel Service*, 377 Pa.Super. 366, 370, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank*, 328 Pa.Super. 135, 140, 476 A.2d 928, 930 (1984). See also: Pa.R.C.P. 1035(b). Instantly, the material facts are not in dispute. We shall not disturb the trial court's decision, therefore, unless the trial court has committed an error of law.

The only issues properly before this Court pertain to the rights and liabilities between the insured and the insurer. We are not now concerned with the rights between buyer and seller, and we are not directly concerned with the rights between insurer and arsonist.

■ In determining whether appellees had an insurable interest in the property sought to be insured, one must focus on the facts as they existed at the time when the policy was issued and at the time the loss by fire occurred. It is not appropriate to look to facts transpiring after the loss occurred to determine such an issue. *Dubin Paper Co. v. Ins. Co. of N.A.*, 361 Pa. 68, 91, 63 A.2d 85, 96 (1949). At the time when the instant policies were purchased, the

5. The appeal recited that it was being taken from the summary judgment of June 26, 1989. This caused the appellee insured to move to quash the appeal on grounds that it had been taken from an interlocutory and non-final order. The motion to quash was denied by the Superior Court without prejudice to appellee's right to renew the same at argument. We are satisfied, however, that the summary judgment possessed sufficient indicia of finality to support an appeal. It was a final determination of liability and also the amount thereof, lacking only the ministerial act of computing pre-judgment interest. The appeal, moreover, was timely whether meausred from the entry of summary judgment or the later order adding interest and entering judgment for the full amount payable. Thus, we treat the appeal as having been perfected and consider the merits thereof.

Iehles were the purchasers of real estate and equipment pursuant to a long-term agreement with the owner. This agreement vested in the buyers an equitable interest in the property being purchased. *Payne v. Clark,* 409 Pa. 557, 561, 187 A.2d 769, 770 (1963); *Zitzelberger v. Salvatore,* 312 Pa.Super. 402, 405, 458 A.2d 1021, 1023 (1983). An equitable interest of this nature is insurable. See: *Pa. Fire Insurance Co. v. Dougherty,* 102 Pa. 568 (1883). Cf. *Kanefsky v. National Commercial Mutual Fire Ins. Co.,* 154 Pa.Super. 171, 35 A.2d 766 (1944). It follows, therefore, that the Iehles had an insurable interest in the entire property purchased and not, as the insurer argues, merely to the extent that they had made payments on account of the full purchase price at the time of the fire. Therefore, the insurer is liable for the full amount of appellees' loss.

> A contract of fire insurance, in simple language, means this: For the premium paid by the insured, the insurer will, in case the insured's building is destroyed by fire, indemnify him to the extent that he can show that his wealth has been depleted by that fire. In other words, the insurance company gives the insured the equivalent in money of the building lost by fire. The "loss" which the insurance company contracted to pay to the owner of the building in the event of its destruction by fire is the actual worth in money of that building before it was destroyed.

*Dubin Paper Co. v. Ins. Co. of N.A., supra* at 82, 63 A.2d at 92.

The liability of the insurer to indemnify the insured for damages sustained by fire is not defeated because the fire was intentionally set by a third person. See: *Giacobetti v. Insurance Placement Facility of Pennsylvania,* 500 Pa. 447, 457 A.2d 853 (1983). After the insurer has paid the loss sustained by the insured, of course, the insurer is subrogated to the rights of its insured against the third person arsonist. This is not altered merely because the arsonist continued to have contractual rights to be paid the

full purchase price by the insured to whom he had sold the insured property.

The insured in the instant case did nothing to impair the subrogation rights of the insurer. The Iehles did not release the third party arsonist from liability for his wrongful acts and they did not, by their conduct, waive or forfeit their right to pursue a tort claim against him.

The tort claim against the arsonist is separate from the contractual rights and duties existing between the buyer-insured and the seller of the insured property. The occurrence of the fire did not per se alter the buyer's obligation to pay the purchase price or the seller's obligation to convey title as provided in the written agreement of sale. Moreover, the decision of the buyer and seller to modify their contract rights inter se following the fire did not alter the rights existing between insurer and insured as established by the policy of fire insurance. The rights of the appellee-buyers against their fire insurance company are not impacted by their decision after the fire to settle and modify the terms of their contract to buy from the seller. It is true, of course, that the seller has been convicted of intentionally setting the fire which destroyed the insured property. The insured-buyers, however, are innocent parties, who settled their contractual rights with the seller without knowledge that he was the person who had set the fire. Therefore, their rights vis-a-vis the appellant insurer have not been forfeited or impaired in any way by their post-fire attempt to modify the contractual rights between themselves and their seller.

We do not now decide or express any opinion regarding the rights of the buyer against the seller. Those rights are the subject of litigation which is still pending in the trial court. Similarly, we do not now decide Coleman's liability for his act of arson or the availability of funds to pay the insurer's subrogation claim. Appellant did not assert a set-off in the proceedings now before us, and with respect to the means by which it can assert and collect its claim against the seller-arsonist we express no opinion. It is

enough for our purposes that the insurer's liability to its insured is clear and that the parties have stipulated to the insured's loss. The trial court properly entered judgment in favor of the insured and against the insurer for this amount.

In a cross-appeal, the Iehles contend that the insurance company's appeal is frivolous and that, pursuant to Pa.R.A.P. 2744, they should receive an award for costs, counsel fees, and delay damages. We reject this argument. "An appeal is frivolous when the realistic chances of ultimate success are slight and continuation of the contest is unreasonable." *Washington Township Municipal Authority v. Pa. Labor Relations Board,* 131 Pa.Commw. 36, 43, 569 A.2d 402, 405 (1990). The principal issue in the instant case is not only novel but, in our judgment, challenging as well. An appeal under these circumstances is not frivolous and does not warrant an imposition of counsel fees and costs upon the appellant. There also is no basis for imposing delay damages upon appellant. Its liability is for interest on the amount owed, which is determined at the legal rate.

Judgment affirmed.