## Gerhard v. Welker

C.P. of Carbon County, nos. 95-1184 and 95-1794.

*Cynthia S. Ray,* for Gerhards.
*Frank R. Cori,* for Welkers.

558

LAVELLE, *P.J.*, July 1, 1997—

## PROCEDURAL BACKGROUND

The above actions arise out of a dispute over the distribution of insurance proceeds which were paid to the parties as a result of a fire that occurred at 125 Mahanoy Street, Tamaqua, Schuylkill County, Pennsylvania, on March 6, 1995.

At the core of the dispute is an agreement of sale dated December 15, 1993, in which William H. Gerhard and Donna M. Gerhard, his wife, were the sellers, and Timothy J. Welker and Heather A. Welker, his wife, were the buyers of the Tamaqua property.

The lawsuit filed by Gerhards to 95-1184 claims that Welkers materially breached the agreement. Welkers denied breaching the contract, and counterclaimed, seeking the insurance proceeds less the balance due on the agreement. Welkers also filed the instant declaratory judgment action, asking this court to interpret the insurance clause in the agreement.

We consolidated the cases for trial.

By order dated October 10, 1996, this court bifurcated Gerhards' breach of contract claim from the declaratory judgment action. We certified to a Carbon County Arbitration Board the question whether a breach of contract had occurred, and held in abeyance the declaratory judgment action and Welkers' counterclaim until final resolution of the breach of contract claim.

On November 27, 1996, the arbitration board determined that Welkers had not committed a material breach of the agreement. No appeal was taken from that award.

## FACTS OF THE CASE

The parties have stipulated to the facts as follows:

(1) At all times relevant hereto, Gerhards were the record owners of the subject premises which are located at 125 Mahanoy Street, Schuylkill County, Pennsylvania.

(2) On or about December 15, 1993, the parties entered into an agreement for the sale of the subject premises whereby Gerhards agreed to sell said property to Welkers.

(3) The agreement had been prepared by the attorney for Gerhards for use in a prior similar transaction and was tailored by Gerhards for use in the Welker transaction.

(4) The agreement was entered into and signed at the home of Gerhards in Carbon County, Pennsylvania, on December 15, 1993.

(5) At the time the agreement was signed, Welkers paid a down payment of $2,000 to Gerhards in accordance with the terms of the agreement.

(6) On or about February 4, 1994, Welkers were named as additional insureds on an insurance policy with the Farmers Insurance Company, policy no. DW791488, on which Gerhards were named as insureds.

(7) All insurance premiums on policy no. DW791488 were paid by Welkers directly to Farmers Insurance Company.

(8) On or about March 6, 1995, the subject premises was completely destroyed by fire.

(9) At the time the property was destroyed by fire, Welkers were in possession of said property.

(10) At the time of the fire, Welkers had made a total of 14 payments of $219.56 each, under the contract.

(11) Pursuant to the amortization schedule (attached to pleadings), the amount paid on principal as of the date the premises were destroyed totaled $948.92.

(12) Of the 14 payments of $219.56, and pursuant to the amortization schedule attached to the respondents' pleadings, $2,124.92 of those payments represented interest on the loan due the petitioners.

(13) As of February 1995, the loan balance owed to Gerhards, as per the amortization schedule, was $14,050.93.

(14) As a result of the aforementioned fire loss, insurance proceeds in the amount of $36,000 were paid by Farmers to the parties jointly, and Security Savings, the mortgagee bank.

(15) The agreement of December 15, 1993 provides on page two as follows: "and it is hereby further agreed by and between the parties that the buyers shall keep all buildings now standing and hereafter erected upon said premises insured for the benefits of the sellers and the buyers, as their interest may appear in a sum no less than the total of all sums due hereon."

## DISCUSSION

Initially, we note that declaratory judgment is an appropriate remedy when "a case presents antagonistic claims, indicating imminent and inevitable litigation." *American Council of Life Insurance v. Foster,* 134 Pa. Commw. 634, 640, 580 A.2d 448, 451 (1990). There is no question in this case that we have a controversy that is ripe for judicial decision. Its resolution will avoid further litigation between the parties.

The controversy here involves an interpretation of the language of the agreement of sale, which provided

for the purchase of the Tamaqua property on a partial payment basis.

Our decision in this matter is circumscribed by several well-settled contract principles. In interpreting a contract, a court's primary consideration is the intent of the parties. *O'Farrell v. Steel City Piping Co.,* 266 Pa. Super. 219, 403 A.2d 1319 (1978). When a written contract is clear and unambiguous, its meaning must be determined by its contents alone. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982). Pennsylvania's law of contracts requires courts to give legal effect to the plain meaning of what is written in contracts. *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991).

The pertinent clause in the sales agreement is as follows:

"And it is further agreed by and between said parties that the buyers shall keep all buildings now standing and hereafter erected upon the said premises insured for the benefit of the sellers and the buyers, *as their interest may appear* in a sum no less than the total of all sums due hereon. . . ." (emphasis added)

The phrase, "as their interests may appear," and its various iterations, have been interpreted to mean that "the parties are entitled to various shares in the proceeds, if they are entitled to any proceeds at all." *Campbell v. Royal Indemnity Co. of New York,* 256 Pa. Super. 312, 316 n.5, 389 A.2d 1139, 1142 n.5 (1978), citing Keeton, *Insurance Law,* 174-83 (1971). The fact that the phrase has been included in other cases with no explanatory verbiage attests to its clear and unequivocal meaning. *Hagan Lumber Co. v. Duryea School District,* 277 Pa. 345, 121 A. 107 (1923); *Chestnut Corp. v. Bankers Bond and Mortgage Co.,* 395 Pa. 153, 149

A.2d 48 (1959); *Giacobetti v. Insurance Placement Facility of Pennsylvania,* 500 Pa. 447, 457 A.2d 853 (1983).

The plain meaning of the language in controversy is that Welkers obligated themselves to insure the Tamaqua property against fire loss and protect the Gerhards' interest to the extent of at least the balance due on the agreement of sale.

By executing the agreement and undertaking this duty to insure, certain rights accrue by law to the Welkers. These rights are spelled out in Pennsylvania's time-honored doctrine of equitable conversion.

Under the doctrine of equitable conversion, a contract for the sale of real estate transfers equitable title to the vendee, who bears the risk of any harm to the property, other than that caused by the vendor, which occurs between the execution of the contract and final settlement. Because the vendee must pay the full contract price whatever the condition of the property, our case law has long held that, although a vendor is legally entitled to recover the proceeds of his insurance policy if the property is destroyed, the vendor's equitable entitlement to the proceeds extends only to the unpaid balance of the purchase price; any excess is deemed to be held 'in trust' for the vendee. See e.g., *Dubin Paper Co. v. Insurance Co. of North America,* 361 Pa. 68, 63 A.2d 85, 89 (1949); *Insurance Co. v. Updegraff,* 21 Pa. 513 (1853)." *Partrick & Wilkins Co. v. Reliance Insurance Co.,* 500 Pa. 399, 403-404, 456 A.2d 1348, 1351 (1983). See also, *Vogel v. Northern Assurance Co.,* 219 F.2d 409, 412 (1955).

Courts have imposed such a constructive trust as an equitable remedy to prevent unjust enrichment which would result if a seller were permitted to retain both the full contract price and indemnification for a loss

which had to be borne by the buyer. *Id.* at 404, 456 A.2d at 1351.

Applying this doctrine when Gerhards agreed to sell and Welkers agreed to buy the Tamaqua property, Welkers became the equitable owners. The right to any increase in the value of the property or any benefits accruing to the property after the execution of the agreement belonged to the Welkers. They also were bound to pay the purchase price to Gerhards no matter what happened to the property and were responsible for any loss that occurred.

To protect against the loss of their purchase price to fire damage, Gerhards required Welkers to pay the premium on their fire insurance policy. Gerhards had determined that the value of their property for fire insurance purposes was $36,000, and the premium was established on that valuation. Welkers, of course, were simultaneously protecting their own equitable interest from loss by paying the premium.

The destruction of the Tamaqua property by fire on or about March 6, 1995 did not abort Gerhards' right to the balance of the purchase price. Nor did it deprive Welkers' right to obtain legal title to the Tamaqua property and the benefits of the insurance policy which they paid for.

The "interests" of the parties in the insurance proceeds are determined then by what insurable interests the parties had in the real estate on the date of the fire loss. Gerhards had the right to what was owed them on the agreement of sale. Welkers were entitled to the insurable value of their interests less the balance of the purchase price.

Therefore, Gerhards, as constructive trustees, are legally entitled to obtain the $36,000 representing the proceeds of the fire insurance policy. They are entitled

to deduct from those proceeds what they bargained for in the contract of sale—the unpaid balance of the purchase price, $14,050.93. The excess, $21,949.07, is deemed to be held "in trust" for Welkers, and they are obliged to deliver such excess to Welkers.

When they receive the balance of the purchase price from the insurance proceeds, under the terms of the agreement of sale, Gerhards must deliver a deed to the Tamaqua property to Welkers.

For the forgoing reasons, we enter the following

## ORDER

And now July 1, 1997, it is hereby ordered and decreed that defendants, Timothy J. Welker and Heather A. Welker, his wife, are hereby declared to be entitled to $21,949.07 of the $36,000 proceeds obtained from Farmers Insurance policy no. DW791488.