515 A.2d 598

**Joseph LUCHANSKY and Josephine Luchansky,
his wife, Appellants,**

**v.**

**The FARMERS FIRE INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued March 26, 1986.

Filed Sept. 25, 1986.

Frank C. Carroll, Washington, for appellants.

Richard W. DiBella, Pittsburgh, for appellee.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

On May 15, 1982, a two story brick home located at 127 Main Street, West Brownsville, was destroyed by fire. Joseph Luchansky and Josephine Luchansky were the insureds under a policy of fire insurance issued by The Farmers Fire Insurance Company. In an action on the policy by the insureds to recover their loss, the trial court denied recovery on the grounds that Joseph and Josephine Luchansky lacked an insurable interest in the Main Street property. The insureds appealed. We reverse.

The improved real estate had been conveyed to Michael Luchansky by his parents, the appellants, pursuant to a written agreement executed on May 20, 1975. That agreement, which made use of a form agreement to sell real estate, required the parents to convey the premises to their son for the sum of One ($1) Dollar. The conveyance was intended to make it possible to borrow money on the security of the home. Accordingly, paragraph seven of the written agreement provided as follows:

> The parties further agree as follows: that in order to secure a mortgage upon hereinafter described realty, the [son] shall hold a deed on behalf of the [parents] and that the [parents] shall continue to hold equitable title or interest to the property. *The [son] shall reconvey it to the [parents] when the mortgage is paid off* or the property sold.

(Emphasis added). Consistently with this expressed intent, the parents also agreed in paragraph five:

> From and after the date of this agreement, insurance and taxes shall be provided and paid for as follows: by the [parents].

Following the conveyance of legal title to the son, a mortgage was placed on the property. The loan proceeds were used for the benefit of the parents, and the mortgage was paid by the parents. They also paid the taxes, purchased insurance and paid the premiums therefor, collected some or all of the rent and made repairs. Although they testified that they paid the taxes, credit therefor was taken in their son's income tax returns. On two additional occasions, the property was again used as security to borrow money. In 1977, the son moved to Nevada. The parents thereafter leased the property to college students, collected the rents, kept the property in repair and kept it insured. However, legal title was not reconveyed to them until October, 1984. In the meantime, the building had been destroyed by fire.

The general rule is that anyone has an insurable interest who derives pecuniary benefit or advantage from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction. 43 Am.Jur.2d *Insurance* § 943; 4 Appleman, *Insurance Law and Practice* § 2123; *Couch on Insurance* § 24:13. A "[r]easonable expectation of benefit from preservation of the property is thus sufficient." 4 Appleman, *Insurance Law and Practice* § 2123. "It is not necessary to constitute an insurable interest that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence." 43 Am.Jur.2d *Insurance* § 943.

> [S]ince the requirement of an insurable interest arose merely to prevent the use of insurance for illegitimate (gambling) purposes, it should not be extended beyond the reasons for it by an excessively technical construction. And a right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advan-

tage, is sufficient. It does not matter in what way such benefit arises or the reason loss would occur thereby, limited presumably by dictates of public policy—if such benefit would be lost by destruction of the subject matter, that interest is insurable.

Thus, it may safely be said that a fee title is clearly not required of the insured, nor even a direct property interest, the test of exposure to financial loss being all important. An equitable title or interest or other qualified property right would clearly be sufficient.... And a person who has made himself responsible for property may insure it against loss.

4 Appleman, *Insurance Law and Practice* § 2123.

■ The evidence in this case demonstrated unequivocally that Joseph and Josephine Luchansky had an insurable interest in the property at 127 Main Street, West Brownsville. The title to the property had been conveyed by the parents to their son for the purpose of making it easier to borrow against the security thereof. In order to protect the parents' interest in the property, however, a written agreement had been prepared. The agreement specifically provided for a reconveyance; it also provided that the property was to be insured by the parents and that the premiums therefor were to be paid by the parents.

The trial court refused to recognize the parents' equitable interest in the real estate which the parties had intended by their written agreement. Contrary to the testimony by parents and son, the trial court held that the agreement had merged in the unconditional deed of conveyance. Because the deed conveyed an unconditional title in fee simple, the court held, the written agreement had merged and was no longer enforceable or even to be recognized by a court as creating an interest in the property which was insurable by the parents.

As a general rule, an agreement of sale will not merge in a deed of conveyance if the intention of the parties is otherwise or where the stipulations in the contract sought to be enforced are collateral to the functions performed by

the deed. *Carsek Corp. v. Stephen Schifter, Inc.*, 431 Pa. 550, 558–559, 246 A.2d 365, 370 (1968). The nature of the agreement in this case and the purposes to be accomplished by the deed of conveyance were such that a merger clearly was not intended by the parties thereto. This was not an action to enforce the provisions of the agreement. Indeed, the parties to the agreement have never disputed the right of the parents to compel a reconveyance by their son. All are agreed that the parents' interest survived the transfer of title. That reconveyance has now been accomplished. The only issue in this case is whether the agreement between parents and son was sufficient to create or at least evidence the existence of an insurable interest in the parents.

Even if we assume that the agreement to reconvey merged in the unconditional conveyance of legal title to the son, the parents nevertheless had an interest in the real estate which was insurable. The agreement between parents and son required the parents to insure and keep insured the Main Street property. This was collateral to the functions to be performed by the deed. *Carsek Corp. v. Stephen Schifter, Inc., supra.* Pursuant thereto, it was in fact the parents and not the son who purchased fire insurance protection and paid the premiums therefor. Whether this was done by the parents pursuant to the terms of the agreement or merely on behalf of their son as agents, they had an insurable interest in the property. "[O]ne who makes a legally enforceable agreement to obtain insurance on property for the benefit of another has an insurable interest supporting a contract of insurance of the property even in his own name." Keeton, *Insurance Law* § 3.4(a)(2). See also: *Couch on Insurance* § 24:13.

■ The transfer of legal title to the son was accomplished so that the son could borrow money for use by his parents. The evidence is undisputed that on several occasions the property was used as security for loans. On all of those occasions, some or all of the loan proceeds were used for the benefit of the parents. In 1977, the son went to

Nevada. In his absence, the parents leased the property to college students and collected the rents. The evidence is clear also that it was the parents who made and paid for necessary repairs to the home. These facts were sufficient to establish beyond peradventure that the parents, even if they held neither "legal" nor "equitable" title to the home, were in a position in which they derived a benefit from the property's existence and would suffer a loss from its destruction. As such, they had an interest which was insurable. See: *Aetna Insurance Co. v. King*, 265 So.2d 716 (Fla.Dist.App.1972) (Although insured held neither "legal" nor "equitable" title to grocery store and its contents which were destroyed by fire, insured nevertheless had an insurable interest in building and contents, where insured's daughters, to whom insured had conveyed property, had made arrangements for use of all proceeds pursuant to lease agreement to be used for care and support of insured); *Etterle v. Excelsior Insurance Co.*, 74 A.D.2d 436, 428 N.Y.S.2d 95 (1980) (Where parents had conveyed title to son but son had agreed orally that his parents could live in home but parents became ill and property was rented by parents, parents had insurable interest). See also: *McHenry v. Stapleton*, 443 Pa. 186, 278 A.2d 892 (1971) (resulting trust created where plaintiff's decedent was intended to be beneficial owner and evidence indicated that defendants' decedent took legal title only because plaintiff's decedent's credit status did not entitle him to get a mortgage, and entire mortgage was paid by plaintiff's decedent).

From at least 1975 to 1982, Joseph and Josephine Luchansky paid premiums to The Farmers Fire Insurance Company to provide insurance protection for the premises on Main Street in West Brownsville. During this period, even though legal title had been conveyed to their son, they kept the premises insured, kept the premises in repair and caused the premises to be leased. During this period, their son, the legal title holder, did not purchase separate fire insurance protection. When appellants purchased insurance protection they were not gambling on the destruction

of somebody else's property by fire. They were insuring against the loss of their own interest, an insurable interest, in the home whose legal title they had conveyed to their son.

Reversed and remanded for determination of the amount of appellants' fire loss which the appellee-insurance company is contractually obligated to pay.