**In re Hazel FOX, Debtor.**

**Bankruptcy No. 84–2598.**
**Motion No. 87–2555.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 28, 1987.

Melvin P. Gold, Welch & Gold, P.C., Pittsburgh, Pa., for debtor, Linda Scharf and Ken Fox.

Dennis J. O'Brien, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Kelly-Springfield Tire Co.

Michael J. Manzo, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for Michelin Tire Co.

Robert S. Bernstein, Bernstein and Bernstein, P.C., Pittsburgh, Pa., Trustee.

David K. Rudov, Rudov & Stein, Pittsburgh, Pa., for Trustee.

Richard W. DiBella, Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for Transamerica Ins. Co.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is the Debtor's *Motion To Compel Distribution* of certain fire insurance proceeds. Michelin Tire Company (hereinafter "Michelin") and Kelly-Springfield Tire Company (hereinafter "Kelly-Springfield") object to same, and seek a determination that the fire insurance policy and its subsequent proceeds were and are property of the estate, distributable to the creditors on a pro rata basis in order of priority. Alternatively, they assert that if the Debtor is entitled to any of said proceeds, she may retain only those amounts actually claimed as exempt on her bankruptcy Schedules.

Debtor acknowledges that she did not list or exempt this estate asset; however, she asserts that as she personally paid the fire insurance premiums, both prepetition and postpetition, neither the policy nor its proceeds constitute property of the estate. In the alternative, she claims that if the proceeds were originally property of the estate, they became her property when she elected her exemptions without objection from any party.

After reviewing the facts as presented and the opposing legal positions, we find that the fire insurance policy and its proceeds do constitute property of the estate. We further find that while the Debtor is entitled to her claimed exemptions, said exemptions are limited to the statutorily created sums as claimed on her bankruptcy Schedules, and *cannot* be realized from the proceeds of the fire insurance policy.

### FACTS

This case began with the filing of the Fox Rubber Corporation (hereinafter "Fox Rubber") bankruptcy in April of 1984. Between April and December 18, 1984 (the date of the Debtor's bankruptcy filing), several actions were commenced, both in the Bankruptcy Court and in the U.S. District Court, by Michelin, Kelly-Springfield, and the Fox Rubber Trustee, against the Debtor, her children, Ken Fox and Linda Scharf, and Fox Rubber's sister corporation, D.A. Tire Company (hereinafter "D.A. Tire"), involving numerous and substantial allegations of fraudulent conduct and fraudulent transactions.

On March 4, 1985, by Order of the U.S. District Court, settlement of the various actions was approved. Said settlement included a payment by Ken Fox and/or D.A. Tire in the sum of $70,000.00 to this estate ($30,000.00 of which was paid to counsels for Michelin and Kelly-Springfield), and the conversion of this case to a Chapter 7 liquidation. The settlement also provided that

no objection to discharge or dischargeability would remain unresolved.

Debtor's Statement of Financial Affairs and Schedules of Assets and Liabilities were filed on that same date. In her Schedules Debtor listed her residence as having a value of $95,000.00 with a first mortgage of $90,000.00. Debtor claimed a $7,500.00 exemption pursuant to § 522(d)(1).[1] Debtor also claimed a $4,000.00 aggregate exemption in the generic category of household goods and clothing, none of which held an individual value above $200.00, pursuant to § 522(d)(3), and $500.00 aggregate value in nondescript jewelry, pursuant to § 522(d)(4). Debtor's Schedules specifically stated that she claimed no other property with market value in excess of said exemptions.[2]

Under subsection (r) of Schedule B–2 (Personal Property), dealing with interests in insurance policies, including *surrender or refund value,* Debtor listed an insurance policy with Prudential Insurance, having a face value of $1,000.00. She did not list, here or otherwise, the existence of the fire insurance policy in question herein issued by Transamerica, with replacement cost coverage on the real estate and actual cash value coverage on the personalty.

The § 341 Meeting of Creditors was scheduled for April 24, 1985 at 1:30 p.m. At 1:35 p.m. on that same date, Debtor's counsel presented a motion requesting that Debtor be excused from attending said hearing for medical reasons. Said motion was apparently signed immediately, and the creditors' meeting proceeded with Dann Fox and Debtor's counsel present to answer questions. Based upon the Schedules as filed, listing minimal assets available for distribution (beyond the proceeds of the settled District Court litigation), creditors were instructed to file claims. No objections were raised or filed, it appearing to the creditors, based upon Debtor's Sched-

ules, that the necessity of same was not indicated.

During the months that followed, the Trustee procured two (2) informal, oral appraisals of Debtor's residence, and was advised that the property was worth between $105,000.00 and $110,000.00. It appears the Trustee determined, based upon Debtor's inaccurate and incomplete Schedules, that after payment of the mortgage, allowance of Debtor's exemption, and provision for a real estate commission, no funds would be realized by the estate. While he indicated in correspondence to Kelly-Springfield, Michelin, and the Debtor that he thought he would abandon said property, he never proceeded to do so. To the contrary, no motion was ever filed and no Court Order was ever entered judicially approving such an abandonment.

On February 11, 1986, a fire of mysterious origin totally destroyed Debtor's residence and the contents therein. It was not until that point that Kelly-Springfield and Michelin became aware of the fire insurance policy.

After an intensive investigation, Transamerica determined that the fire did have incendiary origin; however, being unable to prove with certainty the identity of the actor(s), Transamerica agreed to pay on the policy. The proceeds, as more fully described below, were paid into Court, so that we might determine which of the parties is entitled to same.

Transamerica determined that the cost of rebuilding the house, *exclusive* of the land and foundation, would be approximately $203,000.00. This was substantially above the policy limits of $169,975.33, which sum was paid—$103,586.00 to the first mortgage holder/loss payee, and the remaining $66,389.33 into Court.

Curiously in contrast to the limited items scheduled in the bankruptcy petition, Debtor's submitted insurance claim included a thirty-two (32) page list of personal items consumed in the fire. Her children, Ken

---

**1.** Debtor had an entitlement under § 522(d)(1) to only $5,000.00; it is presumed the additional $2,500.00 was claimed pursuant to § 522(d)(5), the "wildcard" provision.

**2.** Debtor specifically claimed no cash on hand and no items with values in excess of $200.00 each.

and Linda, also submitted personal property claims through the Debtor. The total amount of loss, after considering deductions of fifty percent (50%) value in most instances, was still substantially above the policy limits of $81,500.00. Of this sum, Debtor's individual claim represented $71,-310.65, which has also been paid into Court.

Debtor's insurance claim listed substantial "household goods" with *individual* depreciated values *in excess* of $200.00, including but not limited to the following:

1) foyer fountain
2) 7 foot pool table
3) 25″ remote control color television
4) 10 piece dining room suite
5) 7 piece dinette set
6) 2 designer sofas
7) 2 designer recliners
8) 2 wood coffee tables
9) 2 crystal lamps
10) 3 bedroom suites

These items, along with the other "$200.00 plus" items, totaled over $23,-000.00 in *depreciated* insurable loss.

Debtor's claim also included the following "jewelry" with an *aggregate* insurable loss value of *over* $10,000.00:

1) Man's 2 carat diamond ring in 14K gold setting
2) Several sets of either pendant or ring with earrings, including:
   a) star sapphires with diamonds
   b) pearls
   c) lapis
   d) cameos
3) 14K gold charm bracelet with ten 14K charms; three 18K charms; one 22K charm; and one 24K charm
4) a gold Kugerand; and
5) Several gold chains, pendants, bracelets and tie tacks.[3]

Debtor's claim also included a substantial list of items, with depreciated values of under $200.00 each. Said items totaled *well over* $30,000.00.

Additionally, Debtor claimed the loss of the following cash, totaling $1,188.75:

1) 20 one dollar silver certificates
2) 10 one hundred dollar bills
3) 50 two dollar bills
4) 7 five dollar silver certificates
5) 2 rolls of Kennedy half-dollars

As compared to the aforementioned items, Debtor's bankruptcy Schedules showed *no* cash on hand; no household goods, furnishings or wearing apparel *in excess* of $4,000.00 (each item with a value of under $200.00); *no* books, pictures, art objects or stamps, coin or other collections; no jewelry *in excess* of $500.00 aggregate value; *no* tangible personal property of any other description; and *no* property of any other kind.[4]

## ANALYSIS

■ "Property of the estate", as defined in § 541 of the Bankruptcy Code, includes all legal or equitable interests of the debtor in property as of the commencement of the case. *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985). The determination as to what interests fall within this description must be made according to state law. *In re Farmer's Market, Inc.*, 792 F.2d 1400 (9th Cir. 1986); *In re Brass Kettle*, 790 F.2d 574 (7th Cir.1986). In Pennsylvania the right to payment under a fire insurance policy is a property interest, albeit contingent. Courts have held that an insurable interest exists in anyone having an expectation of pecuniary gain from the conservation of the property or an expectation of pecuniary loss from the destruction of same. *Van Cure v. Hartford Fire Insurance Company*, 435 Pa. 163, 253 A.2d 663 (1969). *See also, Seals v. Tioga County Grange Mutu-*

---

**3.** Debtor claims to have lost all of these items in the fire. In an effort to be generous we will assume that the gold melted rather than evaporated, but that the remains were not recovered. We are hard pressed however, to accept the incineration of a two carat diamond, and are equally disinclined to believe that no search of the remains recovered same.

**4.** Debtor's insurance claim forms indicate that various possessions were purchased during 1985 and early 1986. Said postpetition purchases total $1,714.79.

*al Insurance Co.*, 359 Pa.Super. 606, 519 A.2d 951 (1986); *Luchansky v. Farmers' Fire Insurance Company*, 357 Pa.Super. 136, 515 A.2d 598 (1986); *Christ Gospel Temple v. Liberty Mutual Ins. Co.*, 273 Pa.Super. 302, 417 A.2d 660, *cert. denied* 449 U.S. 955, 101 S.Ct. 362, 66 L.Ed.2d 220 (1979). Therefore, fire insurance is an interest of the debtor in property. As the Debtor had such an insured interest prior to the bankruptcy filing, and said interest continued postpetition, the fire insurance policy was and is property of the estate. Several other jurisdictions have also so held. *See Payne v. Wood*, 775 F.2d 202 (7th Cir.1985) *cert. denied* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *In re Davis*, 730 F.2d 176 (5th Cir.1984); *Matter of Hawkeye Chemical Co.*, 71 B.R. 315 (Bankr.N.D.Iowa 1987); *In re Crownover*, 43 B.R. 22 (Bankr.E.D.Mo.1984). Pursuant to § 541(a)(6) of the Bankruptcy Code, proceeds of estate property are also property of the estate.

■ Debtor asserts that if the proceeds of the fire insurance are in fact property of the estate, they are exempt, as the assets covered by the insurance were exempted by Debtor without objection of the Trustee or any other party. Debtor neglects to consider that she did not claim the contingent property right in the fire insurance as exempt. If property that might be subject to exemption is not claimed as exempt by the debtor, said property remains an estate asset. *Payne v. Wood, supra; Matter of Cipa*, 11 B.R. 968 (Bankr.W.D.Pa.1981). Debtor could have chosen to exempt the policy based on the cost of the premiums paid. However, as Debtor chose not to declare said asset on her Schedules, she would have been hard pressed to exempt same.

This brings us to an even more compelling argument against allowance of said exemptions in these proceeds. The laws of the United States of America, and specifically the Bankruptcy Code at § 521, require a debtor to list all of his or her assets in the bankruptcy Schedules. Wilfull failure to do so subjects the debtor to penal sanction. In addition, it is obvious that concealment of an asset bars a debtor from taking his exemption in such as asset. *Redmond v. Tuttle*, 698 F.2d 414 (10th Cir.1983); *Matter of Doan*, 672 F.2d 831 (11th Cir.1982); *Matter of Dorricott*, 5 B.R. 192 (Bankr.N.D.Ohio 1980). Rarely will an individual voluntarily admit to engaging in activities for which such a penalty will result. In such a case, the Court may examine circumstantial evidence to make its determinations. *See In re Factory Tire Distributors, Inc.*, 64 B.R. 335 (Bankr.W.D.Pa.1986).

In the instant case, we find a combination of both direct and circumstantial evidence of concealment. While Debtor has made no overt admissions in this particular action, she has made some rather provocative declarations in various other actions, not only in this bankruptcy, but also in connection with the Fox Rubber bankruptcy. Specifically, at a hearing in open court on October 23, 1984, Debtor admitted to withdrawing approximately $82,000.00 from the Fox Rubber Corporation just prior to its bankruptcy filing, asserting that if she did not take it then, the Fox Rubber bankruptcy would prevent her from doing so at a later time.

In testimony given about one month later, she admitted to the assignment of $160,000.00 in insurance proceeds to her daughter, knowing that substantial judgment creditors sought to execute upon guarantees she had signed. In that testimony she stated that she wanted to be sure the money would go where her husband intended it to go. Debtor further admitted to later *reclaiming* the insurance proceeds in order to shield her daughter, Linda, from the litigation. Debtor directed Linda to remove the funds from the bank; she received over one-half in cash and the remainder in the form of a cashier's check. Debtor took the check to Atlantic City, cashed it, gambled with it, and returned $15,000.00 poorer. Upon her return, Debtor transferred the remaining funds to her son, to invest in D.A. Tire, Fox Rubber's sister corporation.

As relates to the present bankruptcy, Debtor claimed as exempt, household fur-

nishings and wearing apparel, with individual values of under $200.00 and an aggregate value of $4,000.00; however, she presented absolutely no itemization. Debtor also declared as exempt, jewelry with an aggregate value of $500.00; again, she provided no itemization. Seeing this, without more, would not lead the Trustee to presume the existence of an additional $65,-000.00–$75,000.00 in personal assets. Had Debtor listed the insurance policy—even at the cost of the premium payments—as exempt, declaring an unknown value on the Schedule of Assets, it would have become the Trustee's duty to pursue the "red flag" and inquire further. Without such a signal, he had no knowledge or notice sufficient to generate an inquiry. At the very least, therefore, a claim of exemptions requires a detailed listing, not necessarily of every fork and spoon, but at least of the major items. *See In re Ayers*, 25 B.R. 762 (Bankr.M.D.Tenn.1982). Furthermore, had Debtor listed the real estate coverage available, of $169,975.33, the Trustee would more than likely have re-examined the two (2) oral informal appraisals of same.

Debtor attempts to cloud the issue by concentrating substantial attention on the differences among market value, replacement cost, and actual value. However, as the Seventh Circuit stated in *Payne v. Wood, supra* at 204, "... the difference ... is a distraction. The fire turned physical assets into insurance proceeds; the trustee gets whatever these proceeds happen to be. Similarly, the Paynes [Debtors] get whatever the proceeds happen to be for the property they exempted." *Payne,* however, is distinguishable in one pertinent detail: there is no assertion that the Paynes concealed the existence of the fire insurance policy.

In the case at bar, Debtor did conceal substantial assets from the estate. She is under a duty to do equity before she can claim a right to an exemption. *Stewart v. Ganey,* 116 F.2d 1010 (5th Cir.1941); *In re Ryan,* 32 B.R. 794 (Bankr.D.Md.1983); *Matter of Dorricott, supra.* This case is therefore distinguishable from *Lewis v. Thompson,* 28 B.R. 351 (Bankr.M.D.Pa.) *modified* 30 B.R. 741 (Bankr.M.D.Pa.1983),

as in that case the Court found Debtors' scheduling problems were completely unintentional.

The thoughts expressed by the Fourth Circuit many years ago still ring true:

The statutes of exemption are made for honest debtors, not for those who wilfully and deliberately conceal for their own use and refuse to turn over to their trustee many times the amount exempted to them by the laws of their states.

*Hyman v. Stern,* 43 F.2d 666 (4th Cir. 1930).

Debtor claimed $4,500.00 for household goods, jewelry and clothing; and $7,500.00 as her homestead and "wildcard" exemptions. Debtor also indicated on her insurance claim $1,714.79 worth of items which were clearly purchased postpetition. That being so, Debtor is entitled to claim said sums, but she cannot assert same against these fire insurance proceeds. The proceeds of the policy are assets of the estate and no exemption was taken in said insurance proceeds. Given the totality of the circumstances in this case, this holding is anything but a harsh result. An exemption in estate assets provides an honest debtor with an opportunity to pursue a fresh start. Clearly, the honesty and sincerity of this Debtor is in doubt, and equally clearly, this Debtor has manipulated this estate so as to utilize its assets to her benefit and to the detriment of its creditors.

An appropriate Order will be issued.