**In re Fred A. NAHAS and Virginia Nahas, his wife, Debtors.**

**A.K. NAHAS SHOPPING CENTER, INC., Plaintiff,**

**v.**

**Mary REITMEYER, Trustee for Fred A. Nahas and Virginia Nahas, his wife, Defendants.**

**Bankruptcy No. 90–00363 JKF.**
**Adv. No. 92–0149.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 22, 1993.

928

Gary W. Short, Pittsburgh, PA, for plaintiff.

Holly J. Ford, Brodie Techner Rubinsky & Ford, Philadelphia, PA, Bernadette Puzzuole, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, PA, for Trustee.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is a declaratory judgment action brought by A.K. Nahas Shopping Center, Inc. (hereafter "Shopping Center") seeking a determination that it is entitled to insurance proceeds resulting from a fire which damaged a building located at 407 State Street, Vanport, Pennsylvania. At the time of the fire, the building was owned by Debtors by the entireties and used by the Shopping Center as its warehouse. If the

Shopping Center is found to be the intended beneficiary, the insurance proceeds will not be subject to distribution to creditors of this bankruptcy estate. Following trial, briefs and arguments of counsel and for the reasons which follow, we find that the Shopping Center is the intended beneficiary and is entitled to the insurance proceeds.

### Facts

A.K. Nahas Shopping Center, Inc., is family owned and was incorporated under the laws of Pennsylvania on or about June 22, 1963, to conduct retail sales of groceries, furniture and appliances. Stipulation of Facts ¶ 1, Docket Entry 21.[1] The Shopping Center was named after Debtor Fred Nahas's father, Albert K. Nahas, who died on September 22, 1976. Fred Nahas was executor of the estate. Before his death, Albert K. Nahas was the owner of the real property at 407 State Street, Vanport, Pennsylvania ("407 State Street"). Upon his death, Albert's wife, Tamam Nahas, inherited the property.

On December 1, 1976, Debtors executed a 50–year lease of 407 State Street to the Shopping Center in consideration of one dollar. At the time, Debtors did not own the property nor did they have written authority from Tamam Nahas to act as her agents. Fred Nahas testified that in executing the lease he and his wife were acting as agents of Tamam Nahas. Although there was no written agreement establishing an agency relationship, Debtors believed that they were acting according to Tamam's wishes.[2] On August 29, 1980, Tamam Nahas conveyed 407 State Street to Fred Nahas and on April 27, 1984, Fred Nahas conveyed the property to himself and his wife as tenants by the entireties. Debtors filed a chapter 11 on February 12, 1990. The premises at 407 State Street, which the Shopping Center used to store inventory, was destroyed by fire on July 1, 1990.[3] The case was converted to chapter 7 on November 20, 1990.

---

1. The grocery portion of the business was phased out in 1985. *Fred Nahas Deposition of October 3, 1990, at 20.*

2. Fred Nahas was the executor of Albert K. Nahas's estate.

3. On February 6, 1991, Travelers filed a complaint for interpleader, paid the balance of the

The issue arises because of an ambiguity in the insurance policy summary sheet and in documents submitted in this case by Debtors as their proof of insurance on estate assets.

The Shopping Center contends that it was the named insured and the intended beneficiary of the fire insurance proceeds. The trustee asserts that Debtors' estate is entitled to the proceeds because Fred Nahas's "statements, omissions and filed schedules and attachments" led creditors and the trustee to reasonably believe that the property was insured for the benefit of the estate. *See* Trustee's Answer and Affirmative Defenses to Complaint for Declaratory Judgment at ¶ 26, Adv. No. 92–149, Docket Entry 5. Alternatively, the trustee asks that we pierce the corporate veil if it is determined that the Shopping Center is entitled to the insurance proceeds or that we apply the doctrine of equitable estoppel to prohibit it from acquiring the proceeds.

■ At all times from January 19, 1982, to the present, there was insurance on the property. Between 1982 and 1986 the named insured was A.K. Nahas Furniture Store. From 1986 forward when the insurance agent changed insurance companies, the name on the policy was A.K. Nahas. The trustee argues that Fred Nahas personally is the intended beneficiary of the policy because she interprets the proof of insurance that Fred Nahas submitted to the United States Trustee in the chapter 11 proceeding as listing Fred Nahas as the named insured.

The proof of insurance submitted to the office of the United States Trustee in accordance with the guidelines for chapter 11 debtors consisted of a binder or summary sheet. *See* Defendants' Exhibit BB–2 at 14. It identified the named insured with a number. Next to the word "name" on this document appeared "Fred Nahas". *Id.* Although the trustee's interpretation of the face of the document is a reasonable one, it is not the only possible one. Thus, there is an ambiguity which requires further evidence to resolve. Debtors' insurance agent, Edward Luckey, testified at trial that the "name"

category on the form signified the contact person for the business and not the named insured. Luckey described the policy as a "business package." From January 19, 1982, to July 3, 1986, Luckey placed the fire insurance with Firemens Insurance Company. The policies identified the named insured as A.K. Nahas Furniture Store. In 1986, Luckey switched the insurance policy to The Travelers Insurance Company. The new policy and all renewals since that time listed the named insured as "A.K. Nahas" instead of "A.K. Nahas Furniture Store". However, when the Travelers policy was issued, A.K. Nahas had been dead for ten years. Luckey testified that the policy always was intended to insure the interests of the business, not those of any individual.

Pennsylvania law provides that the construction and interpretation of an insurance contract is governed by the parties' intent "as it is reasonably manifested by the language of the[ ] written contract". *O'Brien Energy Systems, Inc. v. American Employers' Insurance Co.*, 427 Pa.Super. 456, 629 A.2d 957, 959 (1993). There are several facts in this case which establish that the Shopping Center is the intended beneficiary under the policy:

1. A.K. Nahas died in 1976, more than ten years before the 1990 Traveler's policy was issued.

2. The policy, originally issued in 1986, was intended only to replace the Firemens policy under which the named insured was "A.K. Nahas Furniture Store."

3. Edward Luckey, the insurance agent, testified at trial that the Shopping Center was the intended beneficiary.

4. Luckey testified that he did not know how the name change occurred, but it must have occurred when he switched the policy from Firemens to Travelers. He also testified that Fred Nahas was his contact for the Shopping Center's insurance.

5. The policy lists the address of the named insured as "463 State Street" which is the Shopping Center's main showroom.[4]

proceeds into court, and was discharged of all liability under the policy.

4. The policy listed the mailing address as 463 State Street, Vanport, Pennsylvania, but covered 463 and 407 State Street. Fred Nahas and his

This was not the Debtors' residence. Debtors lived at 416 Jefferson Street.

6. Luckey testified that the policy was a "business insurance package" which is not issued to cover personal needs.

7. The 1986 version of the policy contained an exclusion declaration which was signed "Fred Nahas, Mgr.," and had "A.K. Nahas" written on the line identifying the named insured. Plaintiff's Trial Exhibit 8 at 54.

8. The checks in payment of the insurance premiums were drawn on the corporate account and signed by Fred Nahas as treasurer. Plaintiff's Trial Exhibit 13.[5]

9. The Shopping Center was the tenant in the building and had been since at least 1976.

10. Fred Nahas, as a corporate officer, used Luckey as the agent for business insurance, but not for his personal insurance.[6]

11. The proof of insurance submitted to the United States Trustee's office was not a document created by the Shopping Center or by Debtors. Although the proof of insurance is ambiguous on its face, until the fire no party in interest, including the United States Trustee, the creditors or the chapter 7 trustee, attempted to verify or clarify the terms of the policy.

Although the proof of insurance functions as evidence of the identity of the named insured, we find that the ambiguity in the policy requires examination into the terms and the facts surrounding the issuance of the policy. In this case, the credible evidence and circumstances surrounding the acquisition of the policy establish that the Shopping Center was the named insured and intended beneficiary. The notation on the policy that the named insured was "A.K. Nahas" rather than "A.K. Nahas Furniture Store" was a mistake which occurred when the insurance

agent switched the policy from Firemens to Travelers. The Shopping Center paid the insurance premiums out of the corporate account and the checks were signed "Fred Nahas, Treas[urer]." *See* Plaintiff's Trial Exhibit 13.

The trustee argues that the Shopping Center does not have an insurable interest because the lease between it and Debtors for 407 State Street was void *ab initio* inasmuch as it was executed before Debtors owned 407 State Street. However, Pennsylvania law provides that "a person need not have any property interest in the subject matter insured and that a person [has] an insurable interest in property 'if he holds such relation to the property that its destruction by the peril insured against involves pecuniary loss to him.'" *Commonwealth v. Rodebaugh,* 102 Pa.Cmwlth. 592, 519 A.2d 555, 563 (1986). In other words, "[i]t is an elementary principle of insurance law that an insurable interest exists in any party who would be exposed to financial loss by the destruction of a certain property." *Kellner v. Aetna Casualty and Surety Co.,* 605 F.Supp. 331, 333 (M.D.Pa.1984). Because the Shopping Center used 407 State Street as a warehouse, it "derived a benefit from the property's existence and ... suffer[ed] a loss from its destruction." *Luchansky v. Farmers Fire Insurance Co.,* 357 Pa.Super. 136, 515 A.2d 598, 600 (1986).[7]

The trustee cites the statute of frauds, 33 Pa.Stat. § 1, in support of her argument that because Debtors were not the owners of the property when the lease was executed, there is no valid written lease and, therefore, the statute of frauds is violated. However, there is no dispute that the Shopping Center had possession of and used the building as a warehouse, nor is there an allegation that the insurance contract violates the statute of frauds. Thus, while we address the argu-

sister, Olga Nahas, own 463 State Street as joint tenants and the Shopping Center used it as a commercial showroom. The building also contains some apartments.

5. The memo portion of some checks bear policy number 779J8334 which is the number of the 1990 policy.

6. The sole exception was Fred Nahas's notary bond.

7. Because we conclude that the Shopping Center had an insurable interest in 407 State Street, we need not resolve the Shopping Center's contention that the trustee lacks standing to challenge its insurable interest.

ment, we find it to be inconsequential to the result in this case.

> Pennsylvania landlord-tenant law states:
> Real property ... may be leased for a term of more than three years by a landlord to a tenant or by their respective agents lawfully authorized in writing. Any such lease must be in writing and signed by the parties making or creating the same, otherwise it shall have the force and effect of a lease at will only ... unless the tenancy has continued for more than one year and the landlord and tenant have recognized its rightful existence by claiming and admitting liability for the rent, in which case the tenancy shall become one from year to year.

68 Pa.Stat.Ann. § 250.202. The quoted language militates against the trustee's argument that the lease for 407 State Street was void *ab initio*. Although the Shopping Center did not always pay rent, it paid the insurance premiums on the building and contents, maintained the building, and made some capital improvements, including carpeting and a roof. The fact that Debtors did not own the property or have written authority to act as Tamam Nahas's agents when they signed the lease does not vitiate the Shopping Center's insurable interest in the leasehold. We find that the credible evidence established that, in executing the lease to the Shopping Center, Debtors acted in accordance with Tamam Nahas's wishes and, as executor of A.K. Nahas's estate, Fred Nahas had apparent authority to enter into the lease.

■ The trustee further asserts that even if the Shopping Center is the intended beneficiary under the policy, it should be equitably estopped from collecting the proceeds. Under Pennsylvania law,

> equitable "estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he

will be prejudiced if the former is permitted to deny the existence of such facts."

*Zivari v. Willis,* 416 Pa.Super. 432, 611 A.2d 293, 295 (1992) (quoting *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 196–97, 27 A.2d 20, 23 (1942)).

■ The trustee argues that Fred Nahas acted inequitably in failing to disclose the lease of 407 State Street with the Shopping Center in his schedules and by submitting a misleading proof of insurance. However, assuming without deciding that inequitable conduct existed, it was not conduct by the Shopping Center or by Fred Nahas in his corporate capacity. Thus, the conduct is not imputable to the Shopping Center. The schedules were filed in Debtors' personal bankruptcy case. In executing the schedules, Debtors, and Fred Nahas in particular, acted in their individual capacities. The Shopping Center is not a debtor and there was no evidence that in engaging in the allegedly inequitable conduct, Fred Nahas was acting in his capacity as a corporate officer or director.[8]

■ The trustee also argues that if this court determines that the Shopping Center is entitled to the insurance proceeds, the court should pierce the corporate veil and give the proceeds to Debtors' estate. The trustee's theory is that the Shopping Center engaged in inequitable conduct through Fred Nahas. Pennsylvania law permits the corporate veil to be pierced "once it is established that the dominant shareholder or the controlling corporation wholly ignored the separate status of a corporation and so dominated and controlled its affairs that its separate existence was a mere sham." *Wheeling–Pittsburgh Steel Corp. v. Intersteel, Inc.,* 758 F.Supp. 1054, 1057 (W.D.Pa.1990). "The party wishing to prove that the corporate entity should be disregarded ... has the burden of establishing by a preponderance of the evidence that the corporation was an artifice and a sham to execute illegitimate purposes and abuse of the corporate fiction and the immu-

---

8. We also note that, by the time the chapter 11 case was filed, Fred Nahas, a corporate officer, held only six per cent of the Shopping Center's stock. Virginia Nahas held no stock at all and did not take part in corporate matters.

nity that it carries." *Id.* at 1058. Relevant factors include:

(1) failure to observe corporate formalities;

(2) non-payment of dividends;

(3) insolvency of the debtor corporation;

(4) siphoning funds from the corporation by dominant shareholders;

(5) non-functioning of other officers and directors;

(6) absence of corporate records;

(7) whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and

(8) gross undercapitalization.

*Id.* at 1059. *See also Solomon v. Klein*, 770 F.2d 352 (3d Cir.1985); *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186 (W.D.Pa.1992). During the chapter 11, Debtors' monthly statements recited that insurance was in place. In fact, there was insurance on the building and its contents. The problem is that Debtors were not the named insureds or intended beneficiaries. Therefore, any proceeds would not be subject to distribution to their creditors. Although it is incumbent upon bankruptcy debtors to be accurate in the information they provide, there is no evidence that Debtors intended to mislead the trustee, the creditors, or the court. It is apparent to the court from having observed and heard the witnesses and the evidence in this case that Fred and Virginia Nahas did not understand the details and ramifications of the requirement that they submit proof of insurance on estate assets. The credible evidence established that at all times from 1982 to the time of the fire the Shopping Center was the named insured and the intended beneficiary. It paid the premiums, and there is insuffi-cient evidence to support a result that would deprive it of the insurance proceeds.

We also find that the Shopping Center observed the corporate formalities. It held annual shareholder's meetings and the corporate secretary kept minutes at these meetings. The corporation filed its own returns and had a bank account separate from that of Fred and Virginia Nahas.

The trustee asserts that there was commingling of corporate and personal assets through the A.K. Nahas Building Fund Account. The evidence established, however, that this was not a corporate account but a personal bank account maintained by the Nahas family.[9] Fred Nahas, his sister Olga Nahas, and his two sons deposited their personal money into this account and used the money to pay personal expenses as well as expenses on various parcels of real property in which Fred Nahas had an interest, including 407 State Street. In at least one instance, the family members used the Building Fund Account to make a loan to the corporation. The loan was documented in the Shopping Center's corporate minutes. The Building Fund Account was sometimes used to pay expenses of the Shopping Center, and thus has been used for the benefit of the corporation as well as individual family members since the corporation was created in the 1960s. Debtors' children, as the majority shareholders,[10] ultimately will benefit from the use of these funds but that fact is not dispositive of the issue. The deposits into the Building Fund were not corporate funds and did not involve use of corporate assets by Debtors for their personal or family benefit.

---

9. Although at one point Fred Nahas stated that the account was "personal to the corporation", Fred Nahas Deposition of December 18, 1992, at 46, it is clear from the record as a whole that it was not a corporate account but an individual account to which many family members had access. Furthermore, the money in the Building Fund Account came from the personal funds of various family members. The Shopping Center did not deposit funds.

10. Fred Nahas testified that he, as his father before him, began transferring his business inter-ests to his sons over a period of years as he approached retirement. He was semi-retired at the time of trial. Although Fred Nahas is a corporate officer and a shareholder, at the time of the fire he held only six per cent of the stock. Debtors' sons have controlled the corporation since approximately 1987, well before the bankruptcy case was filed in 1990. There were no fraudulent transfers or preferential transfers alleged and, in view of the uncontradicted testimony regarding the timing of stock transfers, there was no proof of impropriety.

**934**

Finally, the trustee argues that this court should equitably subordinate the Shopping Center's claim. However, the trustee raised the issue only in her post-trial brief. Section 510(c) of the Bankruptcy Code requires notice and a hearing before a bankruptcy court can equitably subordinate a claim. Merely raising the issue in a brief does not provide sufficient notice to parties in interest. Therefore, the request for equitable subordination will be denied. Even if equitable subordination was properly raised, it still would not apply in this case because the Shopping Center's right to the insurance proceeds is not a "claim" against the bankruptcy estate within the meaning of § 510(c) of the Bankruptcy Code. Rather, it is a "claim" to insurance proceeds as to which we find it is and at all relevant times was the named insured on the policy and the intended beneficiary of the proceeds. The insurance proceeds are not property of this estate or subject to the claims of creditors of this estate.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **22nd** day of **December, 1993,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED** that the relief requested in the Complaint for Declaratory Judgment is **GRANTED** and this court declares that A.K. Nahas Shopping Center, Inc., is the named insured and sole beneficiary under Travelers Insurance Company Policy No. 779J8334.

It is **FURTHER ORDERED** that the trustee shall remit the proceeds to A.K. Nahas Shopping Center, Inc., within ten (10) days of this order.