In re Jacqueline MATTHEWS, Debtor.

Bankruptcy No. 98–14178DAS.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 27, 1999.

James J. O'Connell, Esq., Phila., for Debtor.

Kristi Doughty, Esq., Mt. Laurel, NJ, for Chrysler Financial Corp.

Edward Sparkman, Esq., Phila., Standing Chapter 13 Trustee.

## MEMORANDUM

DAVID A. SCHOLL, Chief Judge.

This instant contested matter is a motion ("the Motion") to obtain relief from the automatic stay filed by Chrysler Financial Corporation ("CFC") in the individual Chapter 13 bankruptcy case of JACQUELINE MAT-

THEWS ("the Debtor"). The Motion seeks to protect CFC's undisputed perfected purchase money security interest in a 1994 Dodge Ram Van ("the Vehicle") owned by the Debtor, arising from a Retail Installment Sale contract ("the Contract") executed by the Debtor on July 22, 1994.

The debtor filed this case on April 3, 1998. Her amended Chapter 13 Plan filed on September 16, 1998 ("the Plan"), which proposed to pay, *inter alia*, a balance of $16,928.72 to pay off the Vehicle in full, was confirmed on October 15, 1998. In the Motion, filed on August 19, 1998, CFC alleged that the Debtor failed to maintain insurance coverage for the Vehicle as required by the Contract and failed to make all payments to the Trustee pursuant to the terms of the Plan.

The Motion was reported as settled on September 15, 1998, but was relisted for a hearing on December 3, 1998, by praecipe of CFC when apparently no settlement stipulation could be finalized. It was divulged to us on December 3, 1998, that the principal remaining disputed issues were the status of the Debtor's use and title of the Vehicle, which allegedly affected the validity of the insurance on it. We believed that resolution of these issues rendered the Debtor's testimony necessary, and we continued the hearing on the Motion until December 17, 1998.

The Motion invokes 11 U.S.C. § 362(d)(1) as its legal basis, which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;...

The testimony at the hearing of December 17, 1998, established that the Debtor has never had a driver's license. The Vehicle was nevertheless purchased in the Debtor's name for the use of the Debtor and her ex-husband because the latter had poor credit. After the couple separated, the Debtor retained the Vehicle. She then arranged with her married sister, Annette Foster, that Foster could use the Vehicle for her own purposes as long as she also drove the Debtor to work and elsewhere when she needed it. The Vehicle was insured under a policy which Foster and her husband Nathaniel ("the Fosters") had previously obtained to cover another vehicle owned by the Fosters.

The Debtor testified that payments on the insurance policy were current and that the only Trustee payment not yet made was the December payment, which was not due until the month's end and she claimed would be made. CFC's customer service representative, Goran Budaji, testified only that he was unable to verify the insurance coverage of the Vehicle.[1]

In its post-trial submission, CFC focused almost exclusively on an argument that the insurance obtained by the Fosters was invalid because they had no insurable interest in the Vehicle. In so arguing, CFC relied upon *Luchansky v. Farmers Fire Ins. Co.*, 357 Pa.Super. 136, 138, 515 A.2d 598 (1986), which holds that only "one who derives pecuniary benefit or advantage from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction" has an insurable interest in that property. CFC contends that, since the Fosters will not suffer any loss from the destruction of the Vehicle, they do not have an insurable interest in it, rendering the insurance policy invalid and the protection that it purports to provide inadequate.

If anything, these submissions would tend to cast doubt on the Debtor's argument that the Fosters' policy was indeed validly protecting the Vehicle and that she believes that her status as a non-driver is irrelevant to the issue of adequate protection. Perhaps fortunately for the Debtor, we cannot consider these submissions as part of the record.

---

1. The Debtor's brief, though less than two pages of text, attempts to improperly rebut the argument that the Vehicle is uninsured and apparently overcome any "insurable interest" issue, see pages 326–28 *infra*, by attaching copies of, *inter alia*, a post-hearing application of the Debtor for insurance in her own name and the Debtor's application for a learner's permit. *But see, e.g., In re Labrum & Doak, LLP*, 227 B.R. 391, 398 (Bankr.E.D.Pa.1998) (record cannot be supplemented by post-trial submissions).

Although we initially expressed virtually concern as to whether a non-driver could legally own a vehicle under Pennsylvania law, in light of the fact that a resident owner of a vehicle must be licensed as a driver in Pennsylvania rather than another state, *see In re Northrup,* 220 B.R. 855, 862–63 (Bankr. E.D.Pa.1998), we are now convinced that having a driver's license is not a prerequisite for validly owning a motor vehicle in Pennsylvania. See 75 Pa.C.S. §§ 1304, 1305(a), 1782(a).

■ As to CFC's argument regarding the Fosters' lack of an insurable interest in the Vehicle, we do not agree with same. It is true that a person may not recover on an insurance policy covering a loss to property if that person has no insurable interest in the property insured. *See Commonwealth of Pennsylvania v. Rodebaugh,* 102 Pa.Cmwlth. 592, 607, 519 A.2d 555, 563 (1986), citing *Central Dauphin School District v. American Casualty Co.,* 493 Pa. 254, 426 A.2d 94 (1981). However, Pennsylvania law further provides that a person need not have any property interest in the subject matter insured to have an insurable interest in it, and that a person does indeed have an insurable interest in property as long as "he holds such relation to the property that its destruction by the peril insured against involves pecuniary loss to him." 18 P.L.E. 505 (1959), citing *Roberts v. Firemen's Ins. Co.,* 165 Pa. 55, 30 A. 450 (1894).

In *Rodebaugh,* the plaintiffs had donated their home to the Commonwealth with the understanding that they could live in it as long as they so desired. The court ruled that, even though the Rodebaughs did not hold title to the property in question, they nevertheless had an insurable interest in the property because they retained the legal right to live there as long as they wanted. 102 Pa.Cmwlth. at 607, 519 A.2d at 563.

■ Nothing on this record would indicate that the Fosters were less than forthcoming with their insurance company about their respective interest or lack thereof in the Vehicle. An insurer is estopped from questioning the sufficiency of an insurer's interest in insured property when the insurer has issued a policy with full knowledge of that interest. *See Burger King Corp. v. Continental Ins. Co.,* 359 F.Supp. 184, 189 (W.D.Pa.1973); and *Kelly v. Prudential Ins. Co.,* 334 Pa. 143, 152–53, 6 A.2d 55, 59 (1939).

■ The general rule is that anyone who derives pecuniary benefit or advantage from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction has an insurable interest in that property. *See, e.g., Luchansky, supra,* 357 Pa.Super. at 138, 515 A.2d at 599. A " '[r]easonable expectation of benefit from preservation of the property is thus sufficient.' " *Id.,* quoting 4 J. APPLEMAN & J. APPLEMAN, INSURANCE LAW AND PRACTICE, § 2123, at 35–37 (1968). " 'It is not necessary that the insurable interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence.' " *Id.,* quoting 43 AM. JUR.2d 967–68 (1982).

■ We believe that the Fosters indeed do have an insurable interest in the Vehicle. We note that, in *Luchansky,* 357 Pa.Super. at 138–39, 515 A.2d at 599, the court held that a right of ownership in the insured property is not an essential ingredient for an interest in that property to be insurable. Rather, any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient. *Id.* The *Luchansky* court further noted that insurability may arise irrespective of the manner in which way such benefit arises or the reason that a loss occurs, except as limited by potential contrary dictates of public policy. 357 Pa.Super. at 139, 515 A.2d at 599. Under this test set forth in *Luchansky,* the Fosters have an insurable interest in the Vehicle.

The result in *Luchansky* that an insurable interest existed is consistent with the result in almost every case addressing the issue which CFC cited or that we could locate. *See Kellner v. Aetna Casualty & Surety Co.,* 605 F.Supp. 331, 333 (M.D.Pa.1984); *Burger King, supra,* 359 F.Supp. at 188; *Aetna Life Ins. Co. v. Messier,* 173 F.Supp. 90, 94–95 (M.D.Pa.1959); *In re Nahas,* 161 B.R. 927, 931 (Bankr.W.D.Pa.1993); *In re Fox,* 80 B.R.

753, 756–57 (Bankr.W.D.Pa.1987); *Alberici v. Safeguard Mutual Ins. Co.*, 444 Pa.Super. 351, 357–58, 664 A.2d 110, 113–14 (1995); and *Mutual Benefit Ins. Co. v. Goschenhoppen Mutual Ins. Co.*, 392 Pa.Super. 363, 368–70, 572 A.2d 1275, 1277–78 (1990). The only case reaching a contrary result, *Campbell v. Royal Indemnity Co. of N.Y.*, 256 Pa.Super. 312, 315–16, 389 A.2d 1139, 1141–42 (1978), involved the distinct situation where a jury found that a contractor attempting to insure an unoccupied building in which he planned to do work, but had failed to commence working, had no insurable interest therein. The Fosters' actual use of the Vehicle renders the instant facts distinguishable.

■ Also, similar to *Rodebaugh, supra,* there was no proof that the insurer of the Vehicle lacked knowledge that the title of the Vehicle was in the Debtor and not its insureds, the Fosters. It is difficult to see how this fact could have been concealed from the insurer. There is therefore no evidence that the insurer could deny coverage or would attempt to do so in the event of a claim against the policy.

We therefore conclude that CFC cannot succeed in the principal argument which it now addresses. We do, however, make several other observations which support denial of the Motion on alternative grounds.

■ The Plan provides for the liquidation of CFC's claim. The Plan has been confirmed and, as such, binds CFC to accept its terms to effect the liquidation of its debt. *See, e.g., In re Szostek,* 886 F.2d 1405, 1409–10 (3d Cir.1989); *Rafferty v. First Union Mortgage Corp.,* 1998 WL 13584, at *2–*4 (E.D.Pa. Jan. 9, 1998); *In re Smith,* 104 B.R. 695, 700 (Bankr.E.D.Pa.1989); *In Re Brown,* 76 B.R. 1013, 1015–16 (Bankr.E.D.Pa.1987); and *In re Young,* 76 B.R. 504, 506 (Bankr. E.D.Pa.1987). While of course CFC could obtain relief from the automatic stay against the Debtor for cause, in light of the confirmation of the Plan it could do so only on the ground that the Debtor failed to conform to the terms of its treatment under the Plan as written, *see id.,* not on the ground that the Plan as constituted did not adequately provide for it. *Cf. In re Choice,* 1997 WL 599577, at *4 (Bankr.E.D.Pa. Sept. 23, 1997);

and *In re Franklin Pembroke Venture II,* 105 B.R. 276, 278 (Bankr.E.D.Pa.1989).

The Plan makes no reference to insurance on the Vehicle. For CFC to succeed in the Motion on the ground of inadequate insurance coverage, it would have to establish that the Plan implicitly adopted at least certain portions of the Contract, specifically those requiring the Debtor to maintain insurance coverage. And then, assuming *arguendo* that it convinced us that such terms were incorporated into the Plan, it would have to convince us that a change to its detriment occurred regarding the insurance protection post-confirmation. CFC has failed to produce evidence in support of an argument that any such change occurred.

■ In its brief, CFC has made secondary arguments that the Fosters' insurance coverage has lapsed, and that it is entitled to relief under 11 U.S.C. § 362(d)(2). Assuming *arguendo* that a lapse in coverage would entitle CFC to relief, we find that no such lapse has been proven on the record. Moreover, a brief lapse in performance of plan terms which protect a creditor does not always justify relief from the automatic stay for that creditor. *See, e.g., In re Kanuika,* 76 B.R. 473, 476–78 (Bankr.E.D.Pa.1987); and *In Re Tashjian,* 72 B.R. 968, 973–74 (Bankr.E.D.Pa.1987).

■ Confirmation of a plan basically eliminates any argument that relief is appropriate under § 362(d)(2) because the movant must prove that the secured property at issue is not necessary to an effective reorganization. The issues of necessity of the Vehicle to the Debtor and the effectiveness of the Plan have effectively been resolved in the Debtor's favor by confirmation of the Plan. As the cases cited at page 328 *supra* established, CFC is bound to accept the terms of the Debtor's confirmed Plan.

For all of these reasons, the following order denying the Motion is entered.

### ORDER

AND NOW, this 27th day of January, 1999, after a hearing of December 17, 1998, on the Motion of Chrysler Financial Corp.

("CFC") to obtain relief form the automatic stay ("the Motion"), and upon consideration of the parties' respective post-hearing submissions, it is hereby ORDERED AND DECREED that the Motion is DENIED.